**BRADFORD AUDIO CORPORATION,**
Plaintiff-Appellant,

v.

**Edward PIOUS, Individually and as purported Receiver of Bradford Audio Corporation, Defendant-Appellee.**

**No. 297, Docket 31644.**

United States Court of Appeals
Second Circuit.

Argued Jan. 26, 1968.

Decided March 29, 1968.

---

John F. Whicher, New York City (Whicher & Davidson, New York City, on the brief), for plaintiff-appellant.

Edward Pious, pro se.

Before MEDINA, MOORE and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Bradford Audio Corporation, the plaintiff-appellant, brought suit in the Southern District of New York to recover a $50,000 bank deposit which it claims was its own, though in the name of "Irving J. Roth, Special Account" and which was seized by Pious, the defendant-appellee, as receiver for the corporation and Robert L. Bradford, its president, by appointment and order of the Supreme Court of New York under Article 23–A of the New York General Business Law, McKinney's

Consol.Laws, c. 20 (Martin Act). The complaint also sought compensatory and punitive damages, interest and costs. The corporation claims a right to recover under the Civil Rights Act, 42 U.S.C. § 1983, for deprivation of its right to due process under the Fourteenth Amendment. It bases jurisdiction on federal question, 28 U.S.C. § 1331(a), and the Civil Rights jurisdictional statute, 28 U. S.C. § 1343(3) and (4). Judgment was entered in favor of the defendant and the corporation has appealed. We affirm.

The facts are these: The appellant corporation was organized under the laws of the State of New York in 1959. In 1960 a criminal indictment was returned in the Supreme Court of New York against the corporation and its president for violations of the Martin Act. Both defendants were convicted on pleas of guilty to three counts of having failed to comply with registration requirements for broker-dealers and of having engaged in a fraudulent scheme to deprive members of the public of their property by making false representations in the sale of 50,000 shares of the corporation's stock.

Subsequently, in civil proceedings against the corporation and its president, Bradford, Justice Conlon of the State Supreme Court issued an ex parte order, dated November 22, 1960, restraining the transfer of any assets of the corporation or of Bradford or of funds in an account in the Chemical Bank New York Trust Company in the name of "Irving J. Roth Special Account." This order was issued on the basis of an affidavit of Albert Millus, Assistant Attorney General, dated November 22, 1960, which traced funds fraudulently mulcted from the public into Bradford's personal account, thence into the form of bearer treasury bills, converted into a government check, and finally into the Roth Special Account. Roth, the attorney representing the corporation and Bradford in the criminal proceedings, then moved, allegedly without notice to either of them, to vacate that part of the order concerning the special account in order that he himself

might recover the funds deposited. Millus submitted an affidavit in opposition, dated December 13, 1960, and, with particularity, again traced the history of the funds in the Roth Special Account. The motion to vacate was denied.

On December 8, 1961, the Attorney General filed and served a complaint against the corporation and Bradford seeking the appointment of a receiver and a permanent injunction against their engaging in the securities business in the State of New York. On the same date, he also moved for an injunction *pendente lite* enjoining the corporation and Bradford from engaging in the securities business within the State. The affidavit supporting the motion enunciated the necessity of appointing a temporary receiver to avoid the dissipation of the defendant's funds prior to the appointment of a permanent receiver.[1]

Justice Gavagan of the Supreme Court of New York, who was also a stockholder of the Bradford Audio Corporation, granted the motions for a preliminary injunction and a temporary receiver on January 29, 1962, pursuant to § 353–a of the Martin Act, and appointed the defendant, Edward Pious, as temporary receiver. He ordered the receiver to take possession of all property derived from fraudulent practices and "all property * * * of the defendants * * * now in * * * [the corporation's] possession or rightfully belonging to it * * *." He further specifically ordered the Chemical Bank to turn over to the receiver the funds in the Roth Special Account, which the Bank did on January 30. On October 4, 1963, Justice Helman entered summary judgment against the defendants, issued an order restraining them

from engaging in the securities business, and he appointed the appellee, Pious, permanent receiver.

The appellant contends that the receiver's seizure of the $50,000 was under color of Justice Gavagan's order and violated due process of law guaranteed under the Fourteenth Amendment and that, therefore, it is entitled to seek a remedy in the present action under the Civil Rights Act. The appellant alleges that the order was manifestly unlawful in that (1) it directed the receiver to take possession of all the property, instead of limiting him to that derived from fraudulent practices;[2] (2) it was issued upon a motion for a preliminary injunction only;[3] and (3) the judge had a personal financial interest in the case. The appellant also asserts denial of due process of law because no evidence was presented in a proceeding in which it was afforded an opportunity to be heard, nor was evidence presented to establish that any of the funds in the special account seized by the receiver had been derived from fraudulent conduct.

The federal question and the federally protected civil right on which jurisdiction is claimed to be based are both alleged to be the due process clause of the Fourteenth Amendment. The corporation asserts that the proceedings in the Supreme Court of New York and the action of the receiver denied it due process for the several reasons above enumerated. Its complaint that Justice Gavagan ordered the receiver to take all property of the appellant[4] and not just that which derived from fraudulent practices is academic, because the present case is concerned only with the seizure of the $50,000 and there was in the record of

---

1. Appellant's claim that it was never afforded notice that a receivership or any taking of its property was contemplated is unfounded.

2. See Hughes v. Ellenbogen, 256 App.Div. 1103, 11 N.Y.S.2d 561 (2d Dept. 1939); Grenthal v. American Guar. & Liabl. Ins. Co., 5 Misc.2d 994, 995, 161 N.Y.S.2d 985, 987 (Sup.Ct.N.Y.Co.1957).

3. See n. 1, supra.

4. Appellant relies on our language in In re Koch, 116 F.2d 243, 246 (2 Cir. 1940), cert. denied sub nom. Hirson v. Koch, 313 U.S. 565, 61 S.Ct. 941, 85 L.Ed. 1524 (1941) where we stated that "the receiver would have no right to take any specific property from the debtor's possession without a judicial finding that such property was the proceeds of the debtor's fraud or resulted from so intermingling such proceeds with other prop-

the Supreme Court proceedings, evidentiary material in the form of affidavits which traced the derivation of the deposit from the appellant's fraudulent practices. The appellant argues that Justice Gavagan only mentioned the affidavit of Millus of December 8, 1961 which did not specifically trace the origin of the funds. However, the two affidavits filed by Millus earlier were all a part of the same case in that court even though different justices heard various preliminary matters. It is not the business of the federal courts to go back of the judgment of a state court to determine which parts of the record of a civil case before him the state judge considered and what he did not, under circumstances such as these.

■■ Justice Gavagan's participation in the state court case when he was the owner of shares in the corporation to a value of about $300 was a violation of the law of the State of New York.[5] Due process implies an impartial court, which is not provided if the judge has a direct, personal and substantial pecuniary interest in the case. However, Justice Gavagan did no more than grant the application of the Attorney General for the appointment of the temporary receiver and issue the order to the receiver to take custody of the corporation's property.

The purpose of the seizure of the money was to prevent its attachment by various claimants and creditors and place it in the hands of a receiver so that a fair and equitable distribution could be made among the members of the public who could prove that they had been defrauded by the corporation. As the owner of 100 shares of the stock, Justice Gavagan may have stood to benefit if he were shown to have been one of those defrauded. But, as stated above, before the case came before him, Justice Conlon had already enjoined the transfer of the funds in the

Roth Special Account. Justice Gavagan in no way participated in any decision as to the ownership of the money or who, if anyone, was or who was not defrauded or to whom it should be distributed—matters still pending and yet to be determined in the state court. The receiver was simply custodian of the $50,000 subject to the adjudication of the issues in the case. Moreover, Justice Gavagan entered only temporary orders.

■ Justice Helman issued a show cause order which was served on the corporation. Following the Attorney General's motion for summary judgment both the People of the State of New York and the corporation and Bradford filed affidavits covering all of the evidentiary issues. Both parties presented their arguments to Justice Helman who took the case under advisement. He then entered judgment in favor of the People and against the corporation and Bradford, enjoining them from engaging in the securities business. Separate affidavits were also filed by the parties on the issue of making the temporary receiver, permanent. The corporation had full opportunity to raise the question of the invalidity of the orders of Justice Gavagan because of his financial interest but it did not do so, though it attacked the orders on other grounds and objected to a permanent receiver. Justice Helman made the receivership permanent. In effect, Justice Gavagan's appointment of Pious and his order to Pious to take custody of the money were passed upon again by an impartial judge, who could have revoked the whole thing had he found anything irregular or unfair or unjust about the proceedings. The statement by the appellee in oral argument that Justice Gavagan sat on the case through error in completely forgetting that he had any shares in the corporation was not contradicted. In any event any possible infringement of the corporation's

---

erty that identification of the proceeds themselves was impossible." See People v. Reinforced Paper Bottle Corp., 176 Misc. 268, 270–271, 27 N.Y.S.2d 14, 16–17 (Sup.Ct.N.Y.Co.1941).

5. Section 14 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30, prohibits a judge from sitting or taking any part in the decision on any matter in which he has an interest.

rights did not rise to Constitutional stature.

■■ Likewise, there is no issue of federal due process involved in the matter of notice regarding the hearing on the taking of custody of the deposit by the receiver because the appellant clearly had notice of that proceeding. Due process of law requires notice to and an opportunity to be heard by all interested parties in any proceeding which is to be accorded finality. Mullane v. Central Hanover Bank & Trust Co., Trustee, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus it was not a violation of due process for Justice Conlon of the state court to enter an ex parte order for the temporary preservation of the assets and for Justice Gavagan to appoint a temporary receiver of those assets where the appellant was thereafter notified of subsequent proceedings in the case in which its interests in the property were to be determined after full opportunity to be heard.

While, for the reasons stated, there does not appear to have been any denial of due process, the decision need not rest on that conclusion. The appellant's case is fraught with two other difficulties. The first is that the appellant has no cause of action under § 1983 and even if it were able to surmount that barrier, it would come up against the other defeating factor, the immunity of the receiver.

■ With regard to the applicability of § 1983 it may be said that in spite of its broad language it was not intended to turn every defeat or denial of a claimed state right into a federal right with a federal remedy. This action was brought by the appellant to recover the $50,000 seized by the receiver. In essence it is simply an action arising out of the alleged infringement of property or monetary rights and, as such, is not within the purview of § 1983. To qualify under § 1983 the right sought to be enforced must in the main be one incapable of pecuniary evaluation, such as personal liberty, unrelated to and not dependent upon an invasion or deprivation of property interests. A suit for the enforcement of such civil rights will, however, not necessarily be removed from the scope of § 1983 because their enforcement may possibly affect property interests where those interests are incidental or ancillary to the basic personal right. It may be argued that in the present case the appellant has endeavored to assert an unlawful interference with its freedom to deal with its own money or bank account but, even if this could be found to be so, the freedom can only be claimed to be impaired or lost when there has been an infringement of a property right—in this case the alleged unlawful seizure of the money. As the loss of freedom derives from and is dependent for its existence upon the infringement of the property right the action is not within the jurisdiction of § 1983. Howard v. Higgins, 379 F.2d 227, 228 (10 Cir. 1967); McManigal v. Simon, 382 F.2d 408, 410 (7 Cir. 1967); Ream v. Handley, 359 F.2d 728, 731 (7 Cir. 1966); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo. 1962), affirmed, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).

■ If, however, it is assumed, *arguendo*, that § 1983 does apply here, still the appellant cannot recover. We hold that the appellee, as a court-appointed receiver doing no more and no less than to carry out an explicit order, fair and regular on its face, by the appointing court, which unquestionably had jurisdiction under the Martin Act,[6] was

6. The appellant does not claim that the State Supreme Court did not have power to issue an order of the general type issued here, authorizing the seizure of proceeds of a bank account in a proceeding under the Martin Act. Nor is there any question but that the process in question was fair and regular on its face. Any infirmity in that part of the order directing the seizure of the funds in question would have required the receiver to search far beyond the face of the order. A receiver should not be required to look beyond the writ or exercise his judgment as to whether it is valid.

immune from liability to the appellant for taking into his possession as receiver the $50,000 from the Roth Special Account. Section 1983 is not in derogation of common law immunities. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), which held that a trial judge was immune from suit under § 1983 and that the defense of good faith and probable cause was available to arresting police officers. See also, Fanale v. Sheehy, 385 F.2d 866 (2 Cir. 1967); Bauers v. Heisel, 361 F.2d 581, 587–588 (3 Cir. 1966), cert. denied, 386 U.S. 1021, 87 S. Ct. 1367, 18 L.Ed.2d 457 (1967). A court appointed receiver is a quasi-judicial officer within the protection of the immunity.

> Officers of the courts, such as * * * receivers * * * who act in obedience to the lawful mandate of the court or in obedience to lawful process of any sort, are protected or privileged in respect to acts done under such lawful authority * * * A receiver obeying the orders of the court is not a guarantor of the correctness of the court's rulings. 2 Clark, Receivers § 388 (3d ed. 1959).

In Jobson v. Henne, 355 F.2d 129 (2 Cir. 1966) this court refused the immunity to administrative officials of a state school for mental defectives where the plaintiff-appellant, an inmate, sued under the Civil Rights Act, § 1983, and alleged that the officials had placed him under peonage and involuntary servitude under the guise of therapeutic treatment. The decision gave express recognition to the common law immunity afforded legislative and judicial officers, page 133, and it carefully distinguished the case of Francis v. Lyman, 216 F.2d 583 (1 Cir. 1954), in which the First Circuit had held that the immunity did apply to the wardens of a correctional institution who had incarcerated the plaintiff under a judicial warrant valid on its face. The court noted that none of the wardens had

the lawful power to refuse to confine the plaintiff "nor could they be viewed as having" caused the unconstitutional confinement. In commenting on the *Lyman* case in this court's opinion in *Jobson,* we pointed out that in *Jobson,* the administrative officials did have the power to alter the program of treatment of the inmate plaintiff; and, if the conduct consisted of placing the inmate in peonage, they were the ones who brought it about.

The position of the appellee receiver in this case parallels that of the wardens in *Lyman* rather than that of the administrative officials in *Jobson.* "Receivers, like sheriffs or other court officers, may be guilty of contempt of court or liable to the parties injured if they do not obey the lawful orders of the court appointing them." 2 Clark, supra.

Appellant also contends that the defense of official immunity is an affirmative defense which was neither pleaded nor disclosed by the defendant, see Rule 8(c) of the Fed.R.Civ.P., and was, therefore, improperly introduced into the case by the court below without adequate notice to the plaintiff. While the defendant set forth as an affirmative defense the fact of his appointment as temporary receiver, and that such appointment was subsequently made permanent, he did not plead that his seizure and retention of the funds was pursuant to the express orders of the state court. But the appellant itself put into evidence all of the state court record of the proceedings, including the appointing orders and the specific direction to the receiver to seize the $50,000 in the Roth Special Deposit. The appellee may avail himself of the appellant's proof. 2A Moore, Federal Practice ¶ 8.27 [3] at 1853 (2d ed. 1967). Moreover, the issue was tried in the District Court by the implied consent of the parties. See Rule 15(b)[7] 3 Moore, Federal Practice ¶ 15:13 [2] at 987 (2d ed. 1967); and the District Court was bound to consider the issue raised

---

7. Fed.R.Civ.P., Rule 15(b) provides in pertinent part:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

by the evidence even though the appellee made no formal motion to amend his pleadings. Underwriters Salvage Co. of New York v. Davis & Shaw Furniture Co., 198 F.2d 450, 453 (10 Cir. 1952).

The judgment of the District Court is affirmed.