438 F.2d 1396
 Juliette A. TICHON, Plaintiff-Appellant,
v.
John F. HARDER, Acting Commissioner of Welfare of the State of Connecticut; Charles J. Sheehan, Agency Personnel Administrator of the Department of Welfare of the State of Connecticut; Alice H. Sheahan, individually and as District Director of the New Haven District of the Department of Welfare of the State of Connecticut; Aldean E. Painter, individually and as Program Supervisor, Division of Child Welfare Department of Welfare of the State of Connecticut; and Robert Budney, individually and as Case Supervisor, Division of Child Welfare, Department of Welfare of the State of Connecticut, Defendants-Appellees.
 No. 222.
 Docket 35151.
 United States Court of Appeals, Second Circuit.
 Argued November 13, 1970.
 Decided February 18, 1971.
 
 Charles A. Pulaski, Jr., New Haven, Conn., for plaintiff-appellant.
 F. Michael Ahern, Asst. Atty. Gen. of Conn. (Robert K. Killian, Atty. Gen. of Conn., on the brief), for defendants-appellees.
 Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal from the district court's determination that the complaint, seeking damages and declaratory and injunctive relief against appellant's dismissal from her position with the Connecticut Department of Welfare, failed to state a cause of action under 42 U.S. C. § 1983 or § 1985(3). The plaintiff appeals the determination that the claimed denial of procedural due process failed to state a cause of action under § 1983.[1]
 
 
 2
 On June 27, 1969 Juliette Tichon, a recent graduate from Southern Connecticut State College where her major field of concentration was social work, commenced work as a six-months probationary employee with the Connecticut Department of Welfare as a Case Worker I in the Division of Child Welfare, New Haven District. Ultimately, she intended to pursue a professional career as a psychiatric social worker, and in carrying out that objective, she planned to work for a period of time with the Department of Welfare and then return to a university for a graduate degree in social work. As a Case Worker I she received training in and performed social case work of gradually increasing responsibility, and the first six months of her employ was a "working test period," Conn.Gen.Stats. § 5-230, during which she was a "probationary employee." Upon satisfactory completion of this period she could obtain the status of "permanent employee,"[2] Conn.Gen.Stats. § 5-196(r). Appellant's immediate Case Supervisor was Robert Budney whose immediate supervisor was Aldean E. Painter, the Program Supervisor. The District Director was Alice H. Sheahan.
 
 
 3
 Pursuant to Conn.Gen.Stats. § 5-230, Budney prepared a Service Rating Report on December 8, 1969, near the end of appellant's working test period. Although rating appellant's conduct and attendance "good," he rated the quantity of her work "fair" and the quality of work and her judgment "unsatisfactory." Attached to the report was a two and one-half page typed, single-spaced explanation for the evaluation, which enumerated various incidents to support the evaluation and concluded with a recommendation to dismiss the appellant from her position. Appellant was handed a copy of the report and attached explanation on December 9, 1969.
 
 
 4
 Program Supervisor Painter and District Director Sheahan reviewed the report and recommendation, and both concurred in the recommendation for dismissal. Upon Sheahan's approval, the recommendation was submitted to Agency Personnel Administrator, Charles L. Sheehan, and on December 11, 1969 he sent appellant a termination notice, effective December 26, 1969.
 
 
 5
 After her attempts to obtain a remedy through Mr. Sheehan proved unsuccessful,[3] appellant commenced this action in the district court. The complaint alleged a violation of substantive due process based on the alleged arbitrariness and unreasonableness of the stated grounds for dismissal and a violation of procedural due process because (1) she had received no prior notice that termination was being considered or of the reasons being considered for the dismissal, (2) she had not been judged by an impartial official or body, and (3) she was afforded no hearing at which to rebut the charges. The complaint alleged that a cause of action was provided for these violations by the Civil Rights Act, 42 U.S.C. § 1983, and further alleged a violation of § 1985(3) based on an alleged discrimination between appellant and other persons holding Case Worker I positions. Jurisdiction was claimed under 28 U.S.C. § 1343(3).[4]
 
 
 6
 On February 9, 1970 the district court denied a motion for a temporary injunction, 308 F.Supp. 839, and on May 14, 1970 the court granted a motion to dismiss the complaint stating that "[t]he plaintiff has failed to establish * * * that her action * * * is based on the infringement of a federally protected right * * *." Relying on the distinction articulated in its denial of the temporary injunction, the court stated that due process does not require a formal hearing and a right to appeal upon the discharge of a probationary employee, as opposed to a permanent employee. The former category of employees, having less or no reservoir of professional reputation built up through employment, possesses less of a claim to procedural rights, on the theory that interests other than continued employment at a particular job are not at stake. Freeman v. Gould Special School District, 405 F.2d 1153 (8 Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed. 2d 93 (1969); Medoff v. Freeman, 362 F.2d 472 (1 Cir. 1966). See generally Birnbaum v. Trussell, 371 F.2d 672 (2 Cir. 1966). The district court also dismissed the substantive due process claim and the claim based on § 1985(3), but the appeal has been limited to the question whether the allegation that the plaintiff was denied procedural due process states a claim cognizable under 42 U.S.C. § 1983. Because of the importance of Civil Rights jurisdiction under 28 U.S.C. § 1343(3) to the administration of federal jurisdiction, however, we have examined whether the complaint provides a proper basis for jurisdiction under that section, an issue not raised in the court below. For the reasons hereinafter stated, we have concluded that § 1343(3) does not provide jurisdiction and affirm dismissal of the action.
 
 
 7
 Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), reviewed the troublesome history of Mr. Justice Stone's personal rights — property rights formulation of § 1343(3) jurisdiction in Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), and its relationship to general federal question jurisdiction pursuant to 28 U.S.C. § 1331. Eisen adopted that formulation stating that jurisdiction would lie under § 1343(3) "`whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights.'" Eisen v. Eastman, supra, 421 F.2d at 564 n. 7, quoting 307 U.S. at 531, 59 S.Ct. 954. It is apparent, however, as Eisen recognized, that some classes of cases are not readily characterized as involving either rights of personal liberty or property rights but take on characteristics of both. Cases challenging the procedures used in a discharge from public employment are such a class. Eisen v. Eastman, supra, 421 F.2d at 565. Recently, a district court of this circuit held that a case challenging such procedures involved a right of personal liberty for purposes of § 1343(3) jurisdiction, because the loss of job and the profits derived therefrom diminished the freedom of the employee and his family. Taylor v. New York City Transit Authority, 309 F.Supp. 785 (E.D.N.Y.1970). On appeal the case was disposed of on other grounds, 433 F.2d 665 (2 Cir. 1970), and this court did not reach the question. See also Newcomer v. Coleman, 323 F.Supp. 1363 n. 5 (D.Conn.1970). The present appeal, however, requires a decision on the issue.
 
 
 8
 For purposes of § 1343(3) jurisdiction, the claim that appellant was denied procedural due process has no independent jurisdictional significance, Bradford Audio Corporation v. Pious, 392 F.2d 67, 72 (2 Cir. 1968); Roberge v. Philbrook, 313 F.Supp. 608, 612 (D.Vt.1970); rather, the Hague and Eisen test focuses on the interests claimed to be injured by the denial of procedural due process, because it is the character of those interests that determines whether the suit involves a "right of personal liberty" or not.[5] Bradford Audio Corporation v. Pious, supra, 392 F.2d at 72.
 
 
 9
 Discharge from employment cases have presented a variety of underlying interests allegedly injured by the discharge, ranging from those alleging specific violations of rights protected by the first eight amendments of the Constitution to those, like the present appeal, relying on general notions of due process derived from the Fourteenth Amendment. Compare, e. g., Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (Exercise of Fifth Amendment privilege against self-incrimination); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (First Amendment interest); Birnbaum v. Trussell, supra; Taylor v. New York City Transit Authority, supra; Rainey v. Jackson State College, 435 F.2d 1031 (5 Cir. 1970) (First Amendment interest). When the underlying interest allegedly injured by the discharge is one unprotected by any of the first eight amendments, exclusive of protection of property, it is difficult to characterize the claim as one involving a "right of personal liberty," because it becomes more apparent that the only interest at stake is a claimed right to a particular job, an interest easily measured in monetary terms and uneasily equated with "personal liberty." See Freeman v. Gould Special School District, supra. To construct a "right of personal liberty" out of the deprivation of profits from one's job is to misconceive the Hague and Eisen test. Eisen recognized that, viewed as a deprivation of profits, discharge from employment cases would not be cognizable under § 1343(3), and we stated in Bradford Audio Corporation v. Pious, supra, 392 F. 2d at 72, that to the extent the claimed right of personal freedom is dependent for its existence on the infringement of property rights, civil rights jurisdiction will not lie. Moreover, unlike welfare recipients, who exist at a bare subsistence level, it cannot be said that an employee's rights to the profits from his job entail "some sort of right to exist in society." Johnson v. Harder, 438 F.2d 12 (2 Cir. 1971).
 
 
 10
 In applying § 1983 and § 1343, the facts of the case must be analyzed with two determinations in view: first whether the underlying interests are of sufficient moment to invoke procedural protections, see Cafeteria and Restaurant Workers Union v. McElroy, 367 U. S. 886, 895-896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Birnbaum v. Trussell, supra; and, second whether those interests substantially consist of "rights of personal liberty" necessary to sustain jurisdiction under Hague and Eisen. While both property rights and rights of personal liberty can be entitled to the procedural protections provided by due process, only the latter can be asserted in the federal courts under § 1343. While Birnbaum did not necessarily stake out the boundaries of due process, see Kletschka v. Driver, 411 F.2d 436, 446 (2 Cir. 1969),[6] and while it did not specifically discuss § 1343(3) as Eisen did three years later, it did mark the limits of jurisdiction under that section. The appellant is now seeking an extensive enlargement of those limits.
 
 
 11
 The pertinent facts in Birnbaum were these: Dr. Birnbaum, a physician on the staff of the Coney Island Hospital, was allegedly dismissed from his position, without notice of the charges and without a hearing to which he was entitled under state law, because of pressures brought to bear by a hospital union which claimed that Dr. Birnbaum was guilty of anti-Negro bias. Following the dismissal, the First Deputy Commissioner of the New York City Department of Hospitals sent a letter to all other municipal hospitals instructing them not to hire Dr. Birnbaum. The interests at stake were two-fold: his reputation and his ability to pursue his occupation; and the action taken by the hospital officials amid charges of racial bias gave official sanction to the charges, thereby seriously damaging his professional reputation. This damage was compounded by the letter to other municipal hospitals. These two circumstances, taken together, made it apparent that more was at stake in Dr. Birnbaum's dismissal than simply his interest in a particular job; rather he was faced with the effective destruction of his capacity to continue the practice of his profession. This immediate and clear impact on Dr. Birnbaum's means of livelihood established the necessary interest to entitle him to a due process hearing and notice, and it provided the basis for § 1343(3) jurisdiction, because it involved a right of personal liberty sufficiently distinct from property interests to sustain jurisdiction.[7]
 
 
 12
 In the present case the circumstances of appellant's dismissal involve none of the essential elements of § 1343(3) jurisdiction. There is no claim that the dismissal infringed any non-property right protected by the first eight amendments and no serious claim can be made that the circumstances surrounding the dismissal or the manner in which it was accomplished effectively deprived appellant of the established means by which she had maintained her livelihood. No charges had been made against her that were akin to the racial aspersions in Birnbaum in reputation-damaging effect, and there was no wide circulation of the charges calculated to destroy appellant's reputation and her means of making a living, as in Birnbaum.[8] Cf. Kletschka v. Driver, supra, 411 F.2d at 446.
 
 
 13
 Although every dismissal for reasons other than reduction in the work force can be said to have some impact on future employability, Medoff v. Freeman, supra, 362 F.2d at 476, in the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation, it cannot be said that a right of personal liberty is involved.[9]
 
 
 14
 The appellant, in effect, argues that it is not necessary for the employee of the State to have become established in an occupation or profession and to have created a reservoir of standing and reputation for skill, honesty and trust before it can be said that the destruction of these attributes without procedural due process affects the employee's right of personal liberty. She asserts that she has devoted a substantial portion of her undergraduate education to a career in social work and that her opportunities to obtain other positions in this field or to be admitted to a graduate school of social work will be adversely affected by her dismissal as a probationary employee of the State. She claims that these considerations are sufficient to require intervention by the federal courts. But Congress did not intend that every claim of unfair treatment by a state of an employee, even accompanied by a lack of procedural due process, could be brought to the federal courts. Her case is in no way comparable to that of Dr. Birnbaum: she knew she was only on trial as a state employee; she had no profession or occupation and no accumulated reputation as a competent worker which the state arbitrarily destroyed; and she was not discriminated against by reason of race. All of the adverse effects on her future and on her past years of study could have been brought about, before she ever obtained a temporary position, if, for example, she had received barely passing grades in her subjects. If she claimed all of her teachers had arbitrarily graded her lower than the marks to which she felt she was entitled and that she was afforded no procedure for appeal other than a review by the head of the department and the president of the state college, she could take the matter directly to the federal court. Likewise if a teacher had improperly given her a failing mark in an important subject and she failed to graduate so that her intended career was foreclosed, she could, on her theory, have a cause of action within the jurisdiction of the federal court. Although different policies and considerations would inhere in determining whether procedural due process should apply to state college grading systems and to state employment practices, the two situations are comparable from the jurisdictional viewpoint. Neither presents the necessary jurisdictional element of personal liberty involved in Birnbaum, and neither may be brought in federal courts under § 1343(3). The line was drawn in Birnbaum and should remain there.
 
 
 15
 This conclusion in no way derogates or is intended to disparage appellant's claim that her interests are substantial enough to entitle her to an opportunity to correct a decision by the welfare authorities, allegedly based on false information, through an opportunity to challenge Budney's evaluation. We merely hold that the conception of jurisdiction under § 1343(3), which is limited to deprivations of those constitutional and federal statutory rights of personal liberty not dependent for their existence on property rights, and which is founded on important policies of federalism, denies the appellant a forum in federal district court. We recently pointed out in Negron v. Wallace, 436 F.2d 1139 (2 Cir. 1970), that "the framers of the Act of 1871 could hardly have intended it to become the standard method of constitutional attack upon state action * *." A holding that a claimed denial of procedural due process, standing alone, is sufficient to sustain jurisdiction under § 1343(3) would ignore the Hague and Eisen formula and effectively dismiss the role of the state judicial systems in the enforcement of constitutional rights, a role that should be encouraged, not discouraged. See Farrell v. Joel, 437 F.2d 160 (2 Cir. 1971) (concurring opinion of Chief Judge Lumbard). See generally Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, Docket No. 95, Supreme Court of the United States, decided January 19, 1971, dissenting opinion of Mr. Chief Justice Burger, joined by Mr. Justice Blackmun and Mr. Justice Black.
 
 
 16
 The judgment of the district court is, therefore, affirmed.
 
 
 
 Notes:
 
 
 [1]
 42 U.S.C. § 1983 provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [2]
 Conn.Gen.Stats. § 5-230 provides that at the end of the "working test period," a Report shall be prepared by the appointing authority recommending to the personnel administrator whether the employee shall be appointed as a permanent employee
 
 
 [3]
 The statutory right to an appeal upon discharge to which permanent employees are entitled, Conn.Gen.Stats. § 5-202, does not encompass discharges of probationary employees. It is agreed that whatever statutory or regulatory rights applied to the appellant were afforded her and that such rights did not include advance notice of the charges or a hearing
 
 
 [4]
 28 U.S.C. § 1343(3), the jurisdictional counterpart to the cause of action created by § 1983, provides jurisdiction:
 "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"
 
 
 [5]
 In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the underlying interest was the right of welfare recipients to welfare moneys, jurisdiction existed under § 1343(3) to determine whether a welfare recipient had the right to a hearing prior to the termination of benefits. We recently characterized the underlying interest involved in such cases as follows:
 "[W]elfare cases by their very nature involve people at a bare subsistence level, [and] disputes over the correct amounts payable are treated not merely as involving property rights, but some sort of right to exist in society, a personal right under the Stone formula." Johnson v. Harder, 438 F.2d 7, at 12 (2 Cir. 1971).
 Cf. Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); Alterman Transport Lines, Inc. v. Public Service Comm., 259 F.Supp. 486 (M.D. Tenn.1966), aff'd per curiam, 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967), involving the alleged right to equal treatment in tax assessments. Since the underlying interest at stake was payment of taxes, solely a monetary interest, jurisdiction could not be founded on § 1343 (3), the equal protection clause having no independent jurisdictional significance. Roberge v. Philbrook, supra, 313 F.Supp. at 612.
 
 
 [6]
 We do not readKletschka to suggest that any impact on professional reputation, however slight, is sufficient to sustain § 1343(3) jurisdiction, for jurisdiction based on that section was not discussed; rather, jurisdiction to review the action of the administrators of a Veterans Administration Hospital was founded on the Administrative Procedure Act, 5 U.S.C. § 702, which jurisdiction impliedly supported the cause of action under 42 U.S.C. § 1983 against the alleged conspiracy between the state and federal officials.
 
 
 [7]
 Significant also to the question of jurisdiction is the fact that Dr. Birnbaum alleged he would not have been dismissed had he been Negro. Although this allegation of purposeful discrimination was insufficient to sustain a claim under 42 U.S.C. § 1985(3), it constituted an added and significant element in evaluating whether a right of personal liberty was involved in the suit. Cf. Kletschka v. Driver,supra, 411 F.2d at 446. In Birnbaum, 371 F.2d at page 679 we said,
 "As in the case of one accused of disloyalty, removal from office under charges of race prejudice permanently brands the person accused as one who is unable to put public and professional duty above personal bias. In this case, it was well calculated to injure appellant's career as a physician both in private and public practice."
 
 
 [8]
 InBirnbaum, the effect on reputation caused by the publicity surrounding the action of the hospital administrators had a direct bearing on Dr. Birnbaum's livelihood. In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, Docket No. 95, Supreme Court of the United States, decided January 19, 1971, the Supreme Court has indicated that in some circumstances injury to reputation alone is sufficient to sustain § 1343 (3) jurisdiction. There, plaintiff challenged a Wisconsin statute pursuant to which a police chief had posted public notices that plaintiff was not to be sold alcoholic beverages. Jurisdiction was based on § 1343(3), and the Court held that due process required notice to and an opportunity to be heard by a person who allegedly possesses the undesirable traits that invoke the application of the statute. At stake were the plaintiff's good name, reputation, honor and integrity which the public notices and attendant publicity would effectively destroy. Such publicity and notoriety is not inherent in every dismissal from employment case, and where present is appropriately considered in determining whether a right of personal liberty is at stake. Birnbaum v. Trussell, supra, 371 F.2d at 677. Compare Newcomer v. Coleman, supra, where the discharge was accompanied by large amounts of publicity.
 
 
 [9]
 The dictum in Eisen v. Eastman,supra, that discharges from employment could be viewed as the deprivation of the "personal liberty to pursue a calling of one's choice," 421 F.2d at 565, should not be read to suggest that all discharge from employment cases claiming a deprivation of procedural due process present a basis for jurisdiction under § 1343(3). Rather, we read that dictum as consistent with the position taken here that the impact on the person's calling must be such as effectively to deprive him of his livelihood. This dictum in Eisen was followed in Gold v. Lomenzo, 425 F.2d 959 (2 Cir. 1970), where a real estate broker had been deprived of his livelihood by the revocation of his real estate broker's license for charging excessive brokerage fees. The revocation had been effected pursuant to a state statute that prescribed an allegedly confiscatory fee schedule.