**Marshal Irving MOLDAWSKY, Plaintiff,**

v.

**Mayor John V. LINDSAY et al., Defendants.**

**No. 71–Civ. 4978.**

United States District Court, S. D. New York.

March 3, 1972.

George Raboni, Pearl River, N. Y., for plaintiff by Reuben Blum, Brooklyn, N. Y., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants Lindsay, and others by Leonard Bernikow, New York City, of counsel.

Joseph Slavin, Brooklyn, N. Y., for defendants Frohman and Esposito.

CROAKE, District Judge.

## MEMORANDUM

This purports to be a civil rights action for declaratory and injunctive relief, brought under 42 U.S.C. §§ 1983, 1985 and 1986, plus 28 U.S.C. § 1343, as well as under 28 U.S.C. § 1331. Plaintiff, Irving Moldawsky, is a former New York City Marshal, first appointed in 1958, who was not reappointed when his second term of office expired on July 12, 1971. However, he did serve as a "holdover," see Public Officers Law § 5 (McKinney's Consol.Laws c. 47, 1952), from that date until November 12, 1971, when, pursuant to a letter dated October 26, 1971, he was relieved of his position, and apparently replaced by defendant Ira E. Frohman. Plaintiff claims that the termination of his employment was motivated exclusively by vengeance over his unsuccessful opposition to the candidacy of defendant Meade Esposito for re-election as Kings County Democratic Leader.

Plaintiff's allegation is in essence that the defendant Mayor, who had previously voiced opposition to the existence of the office of City Marshal and had refused to fill vacancies, had later acquiesced to political pressures and agreed to fill the vacant offices. To do this in a way which would minimize the possibility of political abuse, on July 8, 1970 the Mayor announced the delegation of some of his authority to consider applications to a new body, called the Mayor's Committee on City Marshals."

Plaintiff then claims that, although he had been interviewed by the Committee, the decision not to reappoint him was made without consultation with the Committee and before it had made any recommendation in his case. Furthermore, the termination was allegedly without any statement to plaintiff of the nature of the grievances against him, or opportunity for him to be heard in his own defense.

Plaintiff argues that this procedure, in juxtaposition with alleged widespread publicity afforded the Committee as having been designed to root out unqualified candidates for the City Marshal office, has resulted in deprivation, not only of plaintiff's property rights to the continued possession of his employment, but also "the honor and the dignity and the respect accorded to a Public Officer." (Plaintiff's memorandum, p. 6.) His conclusion is that his personal and professional reputation has been damaged, his personal liberty violated, and his rights to equal protection and to due process of law infringed.

Plaintiff also claims that the Department of Investigations, which notified him of the termination of his employment, was statutorily incapable of doing so, since authority over City Marshals is vested exclusively in the Mayor pursuant to the New York City Civil Court Act § 1601 (McKinney 1963), and the Department of Investigations is a body independent of the Mayor, having been so created by the New York City Charter, §§ 801, 803. This is apparently claimed to constitute an additional violation of due process. But see Fraiman v. Mancuso, 30 A.D.2d 108, 289 N.Y.S.2d 1011, 1013 (1st and 2nd Depts., per curiam, 1968), aff'd 24 N.Y.2d 891, 301 N.Y.S.2d 633, 249 N.E.2d 474 (1969).

There are now three motions before the Court. The first, by the "city defendants," those represented by the Corporation Counsel, is for dismissal of the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The second motion, by the remaining defendants, Messrs. Frohman and Esposito, represents their joinder in the motion of the city defendants. The third motion, by plaintiff, is for a preliminary injunc-

tion against the appointment of his replacement as a City Marshal, and for a direction that plaintiff be reinstated to his office.

It is the opinion of the Court that it does not possess jurisdiction over this matter and, moreover, that the complaint does not state a claim upon which relief may be granted by this Court. Defendants' motions are therefore granted; plaintiff's cross-motion is denied as academic.

■ There are two possible bases for jurisdiction over this action: civil rights action jurisdiction, and federal question jurisdiction. Civil rights jurisdiction is implemented by 28 U.S.C. § 1343(3) in suits authorized by 42 U.S.C. § 1983, et seq. It provides a basis for jurisdiction only where the right or immunity alleged to have been injured is "one of personal liberty, not dependent for its existence upon the infringement of property rights." Eisen v. Eastman, 421 F. 2d 560, 564, see 564 n. 7 (2d Cir. 1969), quoting Hague v. C.I.O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Stone, J.)

■ Plaintiff's position is a political one; according to the relevant statute, he clearly serves at the pleasure of the Mayor. N.Y.Civ.Ct. Act § 1601, *supra*. His claim, then, is that he has been deprived of a political appointment for unjustifiable reasons. Only property rights are involved in this type of situation.

The Second Circuit has recently stated,

"Discharge from employment cases have presented a variety of underlying interests allegedly injured by the discharge, ranging from those alleging specific violations of rights protected by the first eight amendments of the Constitution to those, like the present appeal, relying on general notions of due process derived from the Fourteenth Amendment [citations omitted]. When the underlying interest allegedly injured by the discharge is one unprotected by any of the first eight amendments, exclusive of protection of property, it is difficult to characterize the test as one involving a 'right of personal ilberty,' . . . ." Tichon v. Harder, 438 F.2d 1396, 1400 (2d Cir. 1971).

Plaintiff Moldawsky has attempted to distinguish his situation from that of *Tichon,* and to draw himself within the mantle of Birnbaum v. Trussel, 371 F.2d 672 (2d Cir. 1966), which involved racial aspersions and blacklisting, with consequent destruction of that plaintiff's reputation and means of making a living. The *Birnbaum* mantle, however, does not fit. Whether or not anyone was "out to get" plaintiff, as has been charged, no public comment was ever made upon his dismissal. Even if some difficulty should be encountered in obtaining new employment, as sometimes happens after a dismissal from any job, the circumstances of the present situation are insufficiently egregious to warrant Civil Rights Act protection. There has been no factual showing that this dismissal will seriously lessen plaintiff's employability elsewhere. Canty v. Board of Education of City of New York, 448 F.2d 428, 430 (2d Cir. 1971). Plaintiff's injury, then, is primarily, if not exclusively, financial; the rights involved are property rights. *See also* Kiernan v. Lindsay, 334 F.Supp. 588 (S.D.N.Y.1971); *cf.* N.Y.Civ.Ct. Act, *supra,* § 1610.

■ In this regard, plaintiff's claim of denial of procedural due process has no independent jurisdictional significance under 28 U.S.C. § 1343(3). Tichon v. Harder, *supra,* 438 F.2d at 1399. To avoid this problem, jurisdiction has also been alleged to exist under 28 U.S.C. § 1331, the "Federal Question" statute.

■ However, in order for jurisdiction to attach, the federal question presented must be "substantial":

"The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of

this court as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938), quoted in Russell v. Hodges, 71 Civ. 275 (S. D.N.Y. October 19, 1971, appeal pending).

■ It is the opinion of this Court that the previous decisions of the Court of Appeals in similar cases have in fact "foreclosed this subject" for present purposes. It may also be the case that an officeholder such as plaintiff has no right under state law to a trial-type hearing before being denied reappointment; but all that need be established at this time is that no such right is present within the Constitution, laws, or treaties of the United States.

The governing authority in this area is the recent case of Alomar v. Dwyer, 447 F.2d 482 (2d Cir. 1971), cert. denied, 404 U.S. 1020, 92 S.Ct. 683, 30 L. Ed.2d 667 (1972). In that action, plaintiff Alomar contested her dismissal from employment because of a municipal reorganization resulting from the Republican divestiture of political control of the Rochester City Hall from the Democrats in 1970. The Court affirmed the dismissal of her action, noting:

"It is well understood that the victors will reap the harvest of those public positions still exempt from [Civil Service] laws. Indeed many such positions are exempt because a new administration taking office can only carry out its policies by replacing certain officeholders. If and when additional exempt positions are to be subject to civil service protection is a matter for action by the appropriate municipal and state authorities and not by a federal court." *Ibid.*, at 483–484.

■ Accepting plaintiff Moldawsky's allegations at face value, the relevant political contest was on a more local level: within the Kings County Democratic party, for its leadership. However, the two situations are otherwise so similar that the reasoning of *Alomar* must apply; plaintiff was explicitly unprotected by civil service status and was therefore vulnerable to the summary dismissal effectuated.

■ The existence of the Mayor's Committee does not change matters. Its powers were advisory only; strictures voluntarily assumed for political purposes can be voluntarily rejected for other political purposes without violation of federally protected rights.

■ Plaintiff has therefore not pleaded a claim upon which relief may be granted. As to 42 U.S.C. §§ 1985 and 1986, which relate to conspiracies to interfere with civil rights, it need only be mentioned, first, that plaintiff has not established that the interference, if any, was with "civil rights," and, second, that he has alleged a conspiracy among defendants only in the most general and conclusory fashion. For instance, he has demonstrated no overt acts taken by defendants or any of them in concert. Finally, there is no valid issue of fact concerning any violation of a right to equal protection by defendants. Kletschka v. Driver, 411 F.2d 436, 447 (2d Cir. 1969).

Plaintiff's action must therefore be dismissed in its entirety both because of lack of jurisdiction and for failure to state a claim upon which relief may be granted. This being the case, the motion for preliminary relief is denied as academic.

This is not to infer any opinion as to the underlying propriety of plaintiff's termination, or concerning the availability of an alternative remedy under applicable state statutes.

So ordered.