William H. STOUT

v.

James Harold WHITEAKER, Individually and as Chairman of the Board of Education of Putnam County, et al.

Civ. A. No. 662.

United States District Court,
M. D. Tennessee,
Northeastern Division.

Feb. 9, 1973.

As Amended June 28, 1974.

James F. Blumstein, Vanderbilt Law School, Nashville, Tenn., for plaintiff.

Aron P. Thompson, Cookeville, Tenn., for defendants.

## MEMORANDUM

MORTON, District Judge.

Plaintiff, formerly a tenured teacher in the Putnam County, Tennessee, school system, brings this action against the Chairman of the Board of Education of Putnam County, certain members of the Board of Education, the Superintendent of Schools in Putnam County, and the principal of Putnam County Senior High School, alleging that defendants contravened his right to due process of law by dismissing him from the school system without first affording him a hearing and an opportunity to challenge the charges upon which he was dismissed. Plaintiff seeks redress for violation of his civil rights under 42 U.S.C. § 1983 and declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3).

The facts of the case are not in dispute, and have been stipulated by the parties as follows. Plaintiff, William H. Stout, was a teacher employed by the Putnam County Department of Education from September, 1958, to June, 1971, and for the last eleven years maintained the status of tenured teacher as set forth in T.C.A. §§ 49–1401 et seq. On March 29, 1971, plaintiff received a letter, dated March 22, 1971, from defendant James W. Norwood, a second-year principal at Putnam County Senior High School where plaintiff had taught for several years, which stated that Norwood would not recommend plaintiff's reemployment for the 1971–72 school year to the Putnam County Board of Education. Plaintiff received no further correspondence from any defendant until April 20, 1971, when he was noti-

fied in a letter signed by defendant James H. Whiteaker, Chairman of the Putnam County Board of Education, and Collie B. Jared, Jr., Superintendent of the Putnam County Schools, that the defendant members of the Putnam County Board of Education, meeting in executive session on April 13, 1971, had dismissed plaintiff from his position as of the end of the 1970–71 school year. The letter informed plaintiff that, under T. C.A. § 49–1416, he could request a hearing at which he might· contest the Board's termination of his contract. However, plaintiff failed to submit such a request within the ten days provided.

The defendants' decision to terminate plaintiff's contract was based upon charges of defendant Norwood, and apparently upon the personal knowledge of the defendant members of the Board, and various unidentified reports and sources communicated to defendant Board members. None of these reasons were specified to plaintiff in his notice of dismissal.

On May 10, 1971, plaintiff did request a hearing before the Board in a letter to defendant Jared, but received no response. Two further similar requests were made on May 15 and August 17, 1971, and again defendants remained silent.

Subsequent to his dismissal plaintiff alleges that he made numerous unsuccessful attempts to locate employment in education or related vocations, and finally, in March, 1972, took employment as a spot-welder and shear operator with a firm in Nashville, Tennessee, where he was employed at the time of institution of this suit on June 22, 1972.

Defendants initially contend that the court is without jurisdiction, asserting that the right sought to be enforced is one of property and as such does not constitute a cognizable claim under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). *See* Bradford Audio v. Pious, 392 F.2d 67 (2d Cir. 1968). Defendants cite further Tichon v. Harder, 438 F.2d 1396 (2d Cir. 1971) in support of the proposition that a right of personal liberty is not involved and relief under the Civil Rights Act therefore unwarranted "in the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation . . . ." *Id.* at 1402. Defendants submit that since the contested employment right is one of property and no showing has been made that the plaintiff's discharge has destroyed his employability in the teaching profession, a claim cannot be made out under § 1983.

Insofar as the dichotomy of the personal versus property rights under the Civil Rights Act is concerned, it cannot be said that either is exclusively within the Act's contemplation. Much has been said of the distinction in various contexts, and whether jurisdiction under 28 U.S.C. § 1343(3) is appropriate when property interests are involved. The Second Circuit has stated that jurisdiction under § 1343(3) lies "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." Eisen v. Eastman, 421 F.2d 560, 564, n. 7 (2d Cir. 1969), quoting Hague v. C.I.O., 307 U.S. 496, 531, 59 S. Ct. 954, 83 L.Ed. 1423 (1939). It has been recognized, however, that " . . . some classes of cases are not readily characterized as involving either rights of personal liberty or property rights but take on characteristics of both. Cases challenging the procedures used in a discharge from public employment are such a class." Tichon v. Harder, *supra*, at 1399; see Eisen v. Eastman, *supra*, at 565. The Supreme Court has recently disavowed a "personal liberties" limitation upon § 1343(3).

"[T]he dichotomy between personal liberties and property rights is a false one . . . . In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil

rights has long been recognized . . . ." Lynch v. Household Finance Corp., 405 U.S. 538, 552, 92 S. Ct. 1113, 1122, 31 L.Ed.2d 424, 434, 435 (1972).

Therefore, that the right sought to be vindicated is one of employment and characterizable as a property right does not, taken alone, render absent jurisdiction under § 1343(3).

While this is dispositive of defendants' bare jurisdictional contentions, there remains the question of whether the facts stipulated herein form the basis for relief under 42 U.S.C. § 1983. The Sixth Circuit in Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), has stated the elements for proof of claim under this section as "1) action taken under color of State law, and 2) a deprivation of a constitutional right as a result of that action." As to the first element, there is no question but that plaintiff's dismissal was accomplished under color of state law. The more fundamental question is whether his dismissal entailed the deprivation of a constitutional right.

■ That there exists no constitutional right to public employment needs no commentary. Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Just as well settled is the proposition that public employment may not be terminated or conditioned in ways which infringe upon the exercise of constitutional rights and freedoms. *See* Orr v. Trinter, *supra*, at 134, for cases depicting constitutionally infirm bases for refusal to rehire a teacher.

In the instant case, however, the state action asserted as being constitutionally impermissible was the manner in which plaintiff's dismissal was accomplished, not that dismissal arose from his exercise of constitutionally protected activity. Thus, the question under § 1983 becomes whether plaintiff's status was such as to make applicable to its termination the Fourteenth Amendment's procedural safeguards, and if so, whether the procedures in effect at the time of

plaintiff's dismissal accorded with due process requirements. The court in *Orr* rejected the similar constitutional contentions presented by a nontenured teacher in that case, and stated:

"[T]he Fourteenth Amendment only protects against the State depriving one of life, liberty, or property without due process of law. 'It has been held repeatedly and consistently that Government employ is not "property." . . . We are unable to perceive how it could be held to be "liberty." Certainly it is not "life." ' Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, . . . ." Orr v. Trinter, *supra*, at 134.

This pronouncement, however, and those subsequently rendered by this circuit in Lukac v. Acocks, 466 F.2d 577 (6th Cir. 1972); Crabtree v. Brennan, 466 F.2d 480 (6th Cir. 1972); Harp v. Clemens, 464 F.2d 1028 (6th Cir. 1972); and Patrone v. Howland Local Bd. of Education, 472 F.2d 159 (6th Cir. 1972), are deemed restricted to nontenure situations in which the interest in employment did not rise to the level of a "property" interest in the constitutional sense.

■ On the basis of the recent Supreme Court holdings in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the court holds that plaintiff's employment as a tenured teacher under Tennessee statute was a "property" interest, the termination of which must be accomplished through procedures consistent with Fourteenth Amendment due process. The clear pronouncement of both *Roth* and *Sindermann* is that when interests in continued employment surpass mere abstract concerns and become legitimate claims of entitlement created by state rules and understandings, then property interests are involved to which the Fourteenth Amendment's procedural safeguards attach. The presence of those essential ingredients of continued em-

ployment expectancy sufficient to establish a status invoking procedural safeguards is a factual question to be resolved in each case, but acknowledged tenure under Tennessee's statutory scheme is clearly such a status. The *Roth* decision contemplates a second situation in which the refusal to renew the contracts of even nontenured teachers must be preceded by notice and the opportunity to be heard. Due process so requires when a person's "good name, reputation, honor or integrity" have been damaged by the reasons assigned for dismissal or alternatively that such dismissal has imposed a "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Board of Regents v. Roth, *supra*, at 573. It appears to the court that dismissal for any of the statutory grounds set forth in T.C.A. § 49–1412, incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination, could result in injury of either type which, had the court's decision not rested upon tenure, might have been sufficient in the instant case to warrant relief.

■ The final question is what does due process require in the termination of a tenured teacher. In any case, the inquiry "must begin with a determination of the precise nature of the governmental function involved as well as of the private interest that has been affected by governmental action." Cafeteria & Restaurant Workers v. McElroy, *supra*, at 895. For determination here is whether the termination of a tenured teacher is consistent with due process when accomplished through procedures which provided the teacher no written notice of the charges against him nor a pre-dismissal hearing at which he could contest their truth or justification.

Certainly not every governmental benefit's severance must be preceded by a pre-termination evidentiary hearing. *See* Goldberg v. Kelly, 397 U.S. 254, n. 10 at 263, 90 S.Ct. 1011, 25 L.Ed.2d 287. Nevertheless, the tendency in the more modern cases has been to confine those benefits which may be terminated without prior hearing within narrow boundaries which, as noted in *Goldberg*, frequently involve situations where the nature of the governmental function and the presence of an imminent threat of public harm are of greater importance than the private interest to be infringed. *See generally*, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, *supra*; Slochower v. Board of Education of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The plaintiff's interest in the present case, no less than those considered in the above citations, demands the recognition that "[a] fundamental requirement of due process is the 'opportunity to be heard,' Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)," and "[i]t is an opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

Defendants urge that their actions accorded with procedures prescribed by Tennessee statute, and that while those procedures in effect at the time of plaintiff's dismissal did not require a hearing prior to dismissal, they were nevertheless a constitutionally permissible means of achieving a compelling state interest of providing prompt removal of undesirable teachers from the classroom environment. If such speed was in fact a prime consideration in plaintiff's dismissal, it is somewhat incongruous that his dismissal was not to become effective until more than a month and a half after the board's decision to terminate his employment was reached. In this instance, it certainly appears that all circumstances were such as to have made it reasonable to have extended to plaintiff the more desirable procedure of prior notice and hearing. The Tennessee legislature has since decided that such procedures are reasonable for all now, and

the court finds that their absence contravened plaintiff's right to due process then.*

In summary, the court holds that the absence of meaningful notice and opportunity to be heard utilized in accordance with Tennessee's former statutory scheme in plaintiff's dismissal did not comport with the requirements of Fourteenth Amendment due process. The court does not attempt to assess whether the grounds themselves for his dismissal were constitutionally permissible—it is entirely possible that they were. But their existence was not reached through procedures which accorded due regard to either plaintiff's state-created interest in his employment or those constitutionally acceptable means by which that employment might be dissolved.

On the basis of the aforementioned findings of fact and law, and in accordance with the relief decreed in Hatton v. County Board of Education of Maury Co., Tenn., 422 F.2d 457 (6th Cir. 1970) and Rolfe v. County Board of Education of Lincoln Co., Tenn., 391 F.2d 77 (6th Cir. 1968), it is ordered that plaintiff be reinstated as a teacher in the Putnam County School System and that he is entitled to recover as damages the salary with normal increases he would have earned had his employment not been terminated. The period to be covered is the salary period commencing with the start of the school term in the fall of 1971 until the date of plaintiff's reinstatement. However, despite plaintiff's objections, the court finds that the general rule of mitigation of damages is applicable, and the above sum shall be reduced by the amount of plaintiff's earnings obtained in other employment less reasonable expenses incurred in the process.

Briefs introduced in the case thus far indicate that following his dismissal plaintiff was unable to obtain similar employment in the Cookeville, Tennessee, area and ultimately had to accept employment as a spot-welder in Nashville, Tennessee. Plaintiff has submitted figures as of September 24, 1972, on amounts earned in that capacity and the extraordinary expenses incurred by reason of his commuting to Nashville, living during the week, and returning to his home and family in Cookeville on weekends. Plaintiff asserts that mileage, Nashville housing, and the cost of meals taken in Nashville should be offset against income in arriving at the amount defendants may claim in mitigation. Plaintiff submits that he is entitled to credit for such expenses incurred during the summer months when school is not in session, but should not be charged for income during this period. However, even though plaintiff's dismissal resulted in subsequent employment being taken at some distance from his home, the court feels that both income earned and expenses incurred in pursuit of his Nashville occupation shall be taken into consideration in the assessment of recovery only for those months which would have been covered by the terms of his employment for defendant. Thus, if plaintiff's compensation for his teaching position would have been computed on a 10-month basis, September-June, then the net amount of his income which may be claimed by defendants in mitigation shall be measured by the same period. During this period, plaintiff may claim mileage and Nashville food and housing as extraordinary expenses, to the extent that these amounts are reasonable.

On the basis of the record now before it, the court has insufficient data upon which to make these calculations. Therefore, it is hereby ordered that counsel for plaintiff prepare a judgment computed in accordance with the above guidelines, submit it to opposing counsel for approval, and file with the clerk of the court within fifteen (15) days of the entry of this Memorandum which, for the purposes of the calculation, shall be

---

* T.C.A. § 49–1416, which prescribes available procedures for requesting a hearing before the School Board, was amended in 1972 to provide that a hearing be held prior to the Board's disposition of a case.

deemed to be the date of plaintiff's reinstatement.

The court's decision in no way restricts defendants' right to redismiss plaintiff from their employ should they find through procedures compatible with due process that reasons still exist which warrant his discharge.