Dorothy LYNCH, on behalf of herself and all other persons similarly situated, Plaintiffs,

v.

HOUSEHOLD FINANCE CORPO-RATION,

David W. Goldman, Commissioner of the Superior Court of the State of Connecticut;

Jack Friedler, Deputy Sheriff of New Haven County, individually and as representative of all Sheriffs, Deputy Sheriffs and Constables of the State of Connecticut;

and

Hospital of St. Raphael Employees Credit Union, Inc., Defendants.

Norma TORO, on behalf of herself and all other persons similarly situated, Plaintiffs,

v.

Eugene A. CAMPOSANO,

Jerome A. Lacobelle, Commissioner of the Superior Court of the State of Connecticut;

Charles H. Barrett, Deputy Sheriff of New Haven County, individually and as representative of all Sheriffs, Deputy Sheriffs and Constables of the State of Connecticut,

and

The Hamden National Bank, Defendants.

Civ. Nos. 13737, 13738.

United States District Court, D. Connecticut.

Oct. 22, 1970.

Allen Sims, William H. Clendenen, Jr., David M. Lesser and Kenneth R. Kreiling, New Haven, Conn., for plaintiffs in both actions.

Richard G. Bell and Charles A. Pulaski, Jr., of Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for defendants Household Finance Corp., Goldman and Friedler in No. 13,737.

Raymond J. Cannon, Daniel R. Schaefer and C. Michael Budlong, Asst. Attys. Gen., and Robert K. Killian, Atty. Gen., State of Connecticut, Hartford, Conn., for defendant Barrett in No. 13,738.

Robert S. Evans, of Evans & Evans, New Haven, Conn., for defendant The Hamden Nat. Bank in No. 13,738.

Eugene A. Camposano, East Haven, Conn., defendant pro se in No. 13,738.

Jerome A. Lacobelle, New Haven, Conn., defendant pro se in No. 13,738.

Gerald W. Brownstein, New Haven, Conn., for The Commercial Law League of America, amicus curiae in both actions.

Before ANDERSON, Circuit Judge, and TIMBERS and ZAMPANO, District Judges.

TIMBERS, District Judge:

## QUESTIONS PRESENTED

In these class actions brought by owners of a savings account and of a checking account, respectively, seeking declaratory and injunctive relief on the ground their constitutional rights are impaired by the Connecticut pre-judgment attachment and garnishment statutes, threshold questions are presented as to whether this Court has subject matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1964), and its jurisdictional implementation, 28 U.S.C. § 1343(3) (1964); and whether the actions are barred by the prohibition against enjoining state court proceedings, 28 U.S.C. § 2283 (1964).

For the reasons stated below, we hold in both actions that the Court lacks subject matter jurisdiction and the actions are barred by the anti-injunction statute. Judgments therefore must be entered for defendants dismissing the complaints in both actions.

## FACTS

The facts alleged in the respective complaints, which are taken as true on defendants' motions to dismiss, may be briefly summarized.

In the *Lynch* action (No. 13,737), on June 20, 1969 defendant Goldman, an attorney representing Household Finance Corporation in a civil action against Dorothy Lynch in the Connecticut Circuit Court for the Sixth Circuit, signed and issued, in his capacity as a Commissioner of the Superior Court, a writ of attachment commanding the attachment of Mrs. Lynch's assets to the value of $800. On June 23, 1969 defendant Friedler, a deputy sheriff for New Haven County, served the writ of attachment on the Hospital of St. Raphael Employees Credit Union, Inc., where Mrs. Lynch had a balance of $494.83 in her savings account. This completed the attachment of Mrs. Lynch's savings account.

In the *Toro* action (No. 13,738), on January 27, 1970 defendant Lacobelle, an attorney representing Eugene A. Camposano in a civil action against Norma Toro in the Connecticut Circuit Court for the Sixth Circuit, signed and issued, in his capacity as a Commissioner of the Superior Court, a writ of attachment commanding the attachment of Mrs. Toro's assets to the value of $700. On January 30, 1970 defendant Barrett, a deputy sheriff for New Haven County, served the writ of attachment on The Hamden National Bank, where Mrs. Toro had a balance of $103.99 in her checking account. This completed the attachment of Mrs. Toro's checking account.[1]

1. Defendant Lacobelle's release of the attachment of Mrs. Toro's checking account on March 31, 1970 raises at least the suggestion of mootness of the *Toro* action, 6A Moore's Federal Practice ¶ 57.13, at 3072 (2d ed. 1966)—an issue which we need not decide in view of our dismissal of the action on other grounds.

In both actions plaintiffs allege that they had no prior notice of the attachments, that they were given no opportunity to be heard prior to the attachments and that the deprivation of plaintiffs' use of the money in the accounts has caused them hardship.

Plaintiffs, purporting to represent those persons similarly situated who are said to constitute a class encompassing all Connecticut residents who have been or will be subjected to pre-judgment attachment or garnishment, claim that the Connecticut pre-judgment attachment and garnishment statutes [2] on their face and as applied to plaintiffs impair their rights under the due process and equal protection clauses of the Fourteenth Amendment.[3] They seek declaratory and injunctive relief, invoking the jurisdiction of this Court pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1964), and 28 U.S.C. § 1343(3) (1964).

Since the actions seek injunctive relief with respect to State statutes upon the ground of the unconstitutionality of such statutes, a special statutory district court of three judges was convened to hear and determine the actions pursuant to 28 U.S.C. §§ 2281 and 2284 (1964).

We do not reach the merits of plaintiffs' constitutional claims. Rather, we grant defendants' motions to dismiss both actions on the grounds that the Court lacks subject matter jurisdiction and the actions are barred by the anti-injunction statute.

OPINION

I

The sole jurisdictional basis for the instant actions is Section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983 (1964), and its jurisdictional implementation, 28 U.S.C. § 1343(3) (1964). Sitting as a district court, we are bound by decisions of the Court of Appeals for this Circuit. Lewis v. Rockefeller, 431 F.2d 368 (2 Cir. 1970). We hold that the decision of the Court of Appeals for this Circuit in Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), is dispositive of the threshold jurisdictional issue presented in both actions before us, namely, whether the rights here asserted, not being ones of personal liberty but

2. Four specific statutory provisions challenged by plaintiffs—Conn.Gen.Stat. §§ 52–279 (amended by P.A. 505 (1969)), 52–280 (1958), 52–329 (amended by P.A. 280 (1961)) and 52–304 (amended by P. A. 517, § 44 (1961))—are part of Connecticut's comprehensive statutory attachment plan set forth in Chapters 904 and 905 of the General Statutes. Conn.Gen. Stat. §§ 52–279 through 52–346 (1958). To the extent here relevant, the pre-judgment attachment procedure is as follows. Attachment of a defendant's real and personal property (with certain exceptions not here applicable) is authorized in a civil action where money damages is demanded in the complaint. Attachment is initiated by plaintiff's attorney, acting as a Commissioner of the Superior Court, who signs and issues the writ of attachment, together with the accompanying summons and complaint. The three are usually incorporated in one document, known as a "writ, summons and complaint." No court order is required for the issuance of such writ of attachment, except in the case of garnishment or foreign attachment of a checking account in excess of $5,000.

Attachment is effected by attaching defendant's property; this is accomplished normally by service of the writ of attachment, together with the summons and complaint, by a sheriff, deputy sheriff or constable upon the person having possession of defendant's property or upon the record of defendant's ownership or upon the person indebted to defendant. The officer making the attachment is required to make personal or abode service upon defendant of a copy of the writ of attachment and accompanying papers.

Once property is attached, the attachment lien may be dissolved upon substitution of a bond with surety.

3. Plaintiffs' due process claim is based upon Sniadach v. Family Finance Corporation, 395 U.S. 337 (1969). Their equal protection claim, for which they cite no direct authority, draws by analogy upon such decisions as F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920), and Korematsu v. United States, 323 U.S. 214 (1944).

dependent for their existence upon the infringement of property rights, are outside the protection of 28 U.S.C. § 1343 (3) (1964). 421 F.2d at 564 and 566. We hold they are.

The court in *Eisen* had before it a New York landlord's claim that the New York City Rent and Rehabilitation Law violated his constitutional right not to be deprived of property without due process of law by reducing rents to the amounts to which Eisen was restricted under the law there involved. The court held that "Since the complaint . . . alleged only the loss of money, the district court's conclusion that jurisdiction under the Civil Rights Act was not established . . . was thus correct." Eisen v. Eastman, *supra*, at 566.

Interference with a Connecticut resident's right to the uninterrupted use of her bank account, like the interdiction of a New Yorker's right to rely upon an undiminished amount of rental income from his property, has to do almost entirely with the loss of money; it involves, at most, only an incidental deprivation of personal rights in the sense of "personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. CIO, 307 U.S. 496, 531 (1939); Eisen v. Eastman, *supra*, at 564.

Access to funds held in a savings account or a checking account—the infringed property rights which Mrs. Lynch and Mrs. Toro claim unite the interests of their classes—is so close to the simple ownership of the money involved as to be virtually indistinguishable. Unless such a right to own or use one's money is closely linked by custom to an expenditure to secure or protect a right which is in some sense "personal" and incapable of monetary valuation, as might be the case with welfare payments and wages, it is outside the protection of § 1343(3). Otherwise, any plaintiff could claim that money taken under color of state law is marginal to his capacity to maintain the barest minimum in food, shelter, health care or personal credit rating, thereby negating *Eisen*.

Escalera v. New York City Housing Authority, 425 F.2d 853, 864 (2 Cir.), cert. denied, 400 U.S. 853 (1970), may not be read to suggest that *Eisen* is to be ignored in this fashion or by reasoning that any deprivation of procedural due process is automatically "personal", since the underlying right in question there was the continued occupancy of scarce public housing.

The instant cases illustrate the confusion created by the argument that the use to which a specific plaintiff might put $494.83 or $103.99 which has been set aside in a savings account or a checking account makes any of the incidents of ownership of such accounts fundamental matters of "personal liberty." To be consistent, a suitable class could be defined only in terms of plaintiffs with like subjective intentions or identical degrees of emergency need for the precise amount of money left in their savings or checking accounts at the moment they were or might be garnished. The class would be not just all poor people with savings or checking accounts, but only those likely to feel the pinch of garnishment in the same manner through a loss of marginal sums necessary to safeguard incalculable personal interests. No such class could be defined as a practical matter. And the possible mootness of Mrs. Toro's own garnishment complaint would be enough to require dismissal even if there were jurisdiction.[4]

## II

In view of our decision that the instant actions must be dismissed for lack of Civil Rights Act jurisdiction, *supra* pp. 1113–14, it is not necessary for us to reach other grounds urged for dismissal. Since the anti-injunction statute, 28 U.S.C. § 2283 (1964), pressed upon us by defendants, appears to be so uniquely applicable here, however, we rest our decision alternatively upon that ground.

4. Note 1 *supra*.

Plaintiffs are asking this Court for injunctions to stay state court proceedings for which no express authorization exists. Service of garnishment papers by the deputy sheriffs not only supplied sufficient color of law to satisfy § 1983, according to plaintiffs, but such service also began state court proceedings. Cf. Greater Continental Corp. v. Schechter, 304 F.Supp. 325, 329–30 (S.D.N.Y.1969), appeal dismissed, 422 F.2d 1100 (2 Cir. 1970).

 Although garnishment may be separated from the underlying in personam action, nevertheless it cannot be enjoined if the result would amount to "substantially interfering with the prosecution of a pending state proceeding." Studebaker Corp. v. Gittlin, 360 F.2d 692, 696–97 (2 Cir. 1966). Leaving aside the possible mootness of Mrs. Toro's individual case,[5] if there is a valid Civil Rights Act class still subject to garnishment, then the interference with existing creditors' suits probably would be substantial.

Furthermore, despite all the controversy over this point in the context of criminal cases, see McLucas v. Palmer, 427 F.2d 239 (2 Cir.), cert. denied, 399 U.S. 937 (1970), it is clear that our Circuit has not recognized § 1983 as an express exception to § 2283 in authorizing stays of state court civil proceedings. Studebaker Corp. v. Gittlin, *supra*, at 696–97; see also Stevens v. Frick, 372 F.2d 378 (2 Cir. 1967). Even if the

Supreme Court should resolve the controversy by holding that an exception exists under certain circumstances involving criminal prosecutions,[6] such exception is not likely to apply to stays of commonplace civil proceedings already under way.

Boone v. Wyman, 295 F.Supp. 1143 (S.D.N.Y.1969), aff'd, 412 F.2d 857 (2 Cir. 1969), cert. denied, 396 U.S. 1024 (1970), does not appear to be applicable here. *Boone* held that the *de novo* judicial remedy provided by the state made the state procedures entirely adequate so that the federal constitutional due process claim became superfluous and unnecessary; but in the present case, there is no question of the substantiality of the constitutional claim. See Sniadach v. Family Finance Corporation, 395 U.S. 337 (1969). Instead, the question here is whether there is a plaintiff or a class before this Court as to whom the issue is not either purely monetary, moot, or already on the way to adjudication in an adequate state forum. Upon the record before us, this question must be answered in the negative.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

## ORDER

Ordered that judgments be entered for defendants dismissing the complaints, but without costs.

---

5. Note 1 *supra*.

6. See arguments before the Supreme Court on April 29, 1970, as reported at 38 U.S. L.W. 3429–30 (U.S. May 5, 1970) in Younger v. Harris, prob. juris. noted, 393 U.S. 1013 (Jan. 13, 1969) (No. 163, 1968 Oct. Term; renumbered No. 4, 1969 Oct. Term), ass. for rehearing, 399 U.S. 922 (June 29, 1970) (renumbered No. 2, 1970 Oct. Term); Samuels v. Mackell, prob. juris. noted, 393 U.S. 975 (Dec. 9, 1968) (No. 580, 1968 Oct. Term; renumbered No. 11, 1969 Oct. Term), ass. for rehearing, 399 U.S. 922 (June 29, 1970) (renumbered No. 7, 1970 Oct. Term); Fernandez v. Mackell, prob. juris. noted, 393 U.S. 975 (Dec. 9, 1968) (No. 844, 1968 Oct. Term; renumbered No. 20, 1969 Oct. Term), ass. for rehearing, 399 U.S. 922 (June 29, 1970) (renumbered No. 9, 1970 Oct. Term).