**Peter CLARK and Bruce A. Morrison**

v.

**Lucy T. HAMMER, individually and in her capacity as Chairman, Board of Directors, Connecticut Student Loan Foundation, et al.**

Civ. A. No. 14824.

United States District Court, D. Connecticut.

March 8, 1972.

Granting Motion to Convene a Three-Judge Court May 9, 1972.

Peter Clark, pro se.

Bruce A. Morrison, pro se.

Ralph G. Elliot, Alcorn, Bakewell & Smith, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Plaintiffs, students at the Yale Law School, challenge the constitutionality of Conn.Gen.Stat. § 10–361(a) and § 1(c) (2) of the Regulations of the Connecticut Student Loan Foundation. The statute provides that no one shall be eligible for a loan from the Foundation unless he has been a resident of Connecticut for at least one year prior to application. The regulation provides, *inter alia*, that Connecticut residence cannot be gained while one is a student at an institution of higher learning.

Plaintiffs allege these facts. They moved to Connecticut during September of 1970 to attend the Yale Law School. Both had previously lived in Illinois. Both have resided in Connecticut since September, 1970, both are Connecticut voters, both are married, both hold part-time jobs. Both claim to have no present intention to change domicile and claim to be fully emancipated from their parents.

Both plaintiffs submitted applications for student loans during the summer of 1971, both were rejected for failure to fulfill the one year residency requirement. Subsequently, after living in Connecticut one year, each renewed his application, which were this time denied because of the regulation against students gaining residence while in attendance at institutions of higher learning. Both claim that these regulations violate, *inter alia*, their right to travel, the equal protection clause of the Four-

teenth Amendment, and the due process clause of the Fourteenth Amendment.

Plaintiffs base their cause of action upon 42 U.S.C. § 1983 and claim jurisdiction under 28 U.S.C. § 1343(3), and seek the convening of a three-judge court. Defendants' brief in opposition to the three-judge court raises several objections, including claims that the Foundation is not a state agency, its officers are not state officials, and that the challenged regulation is not a state statute. Among these objections, defendants note that § 1343(3) does not confer jurisdiction for complaints concerning the loss of money. While the reference is oblique, the point is jurisdictional, and must be considered.

The starting point for any discussion of § 1343(3) jurisdiction is Mr. Justice Stone's concurring opinion in Hague v. C.I.O., 307 U.S. 496, 518, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). That opinion stressed the incongruity of reading § 1343(3) so as to completely overlap with 28 U.S.C. § 1331, the general federal question provision. Instead, Justice Stone thought that the civil rights provision applied only "whenever the right of immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." 307 U.S. at 531, 59 S.Ct. at 971. However, as Judge Friendly so aptly stated in his scholarly opinion in Eisen v. Eastman, 421 F.2d 560, 564 (2d Cir.1969), this definition "has been considerably easier to state than to apply."

The issue here is whether the plaintiffs' claim is a liberty claim, for which § 1343(3) provides jurisdiction, or a property claim, which would be considerable under § 1331 if the $10,000 jurisdictional amount were properly pleaded. There appear to be two distinct aspects of the problem that require analysis. The first is the nature of what is immediately at issue—that is, what the plaintiff is suing to obtain or to be free of. As Eisen teaches, there is a spectrum at one end of which are complaints that property has been taken, Ream v. Handley, 359 F.2d 728 (7th Cir.1966), How-

ard v. Higgins, 379 F.2d 227 (10th Cir. 1967), and at the other end of which are denials of "pure" liberty, such as the right to vote, to enjoy freedom of speech, and to be free from unreasonable searches and seizures. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In between, and presenting greater difficulty of classification, are cases that can be viewed as either property or liberty claims, such as those involving loss of employment. The latter have been refined into two classes: suits to obtain or hold only a particular job, which are said to be property claims, Tichon v. Harder, 438 F.2d 1396 (2d Cir.1971), and suits complaining of the loss of the opportunity to earn a living, which are said to be liberty claims. Birnbaum v. Trussell, 371 F.2d 672 (2d Cir.1966).

Also occupying the middle of the spectrum are certain claims for money. While these might be thought to be clear property claims, that apparent certainty has evaporated whenever the money claimed is a public welfare benefit. In those situations, if the loss of money is viewed as impairing a right to minimal existence, the claim is considered to be one of personal liberty. Johnson v. Harder, 438 F.2d 7 (2d Cir.1971). Whether this is really a consistent application of the Eisen formulation or an exception to it is not entirely clear. See Johnson v. Harder, supra, at 12 n. 6. This special treatment of welfare cases has prompted a three-judge court in this district to describe as liberty claims those suits for any money which is "closely linked by custom to an expenditure to secure or protect a right which is in some sense 'personal' and incapable of monetary valuation." Lynch v. Household Finance Corp., 318 F.Supp. 1111, 1114 (D.Conn. 1970), prob. juris. noted, 401 U.S. 935, 91 S.Ct. 962, 28 L.Ed.2d 214 (1971).

Under the illumination of these cases, the basic claim of these plaintiffs lies at the property end of the spectrum.

They seek a loan of money; or more precisely, they seek the right to obtain such a loan at the favorable interest rates of the Connecticut Student Loan Foundation. Plainly, the difference between such a favorable loan and a loan from conventional sources can be quantified as a precise sum of money. Even if these plaintiffs were unable to obtain loans from other sources (a contention not clearly pleaded), their claim is nonetheless for money.

Nor does the purpose for which the loan is sought transform this claim into a personal liberty one. Education, even at the Yale Law School, however important, is not the equivalent of subsistence. Moreover, plaintiffs allege that they are currently enrolled at the Yale Law School, thereby demonstrating that the loss of the economic benefit they seek has not deprived them of that educational opportunity.

However, there is a second, more troublesome aspect of the problem. Cases following *Eisen* have suggested that attention must focus not only on the right or immunity immediately at issue (here the loan) but also upon whatever underlying rights are consequentially impaired by the challenged action. *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.1970), was the first to open this line of inquiry. The claim in *Escalera* was for public housing, and the court conceded that this was a property claim. Nevertheless, jurisdiction under § 1343(3) was sustained on the ground that the denial of housing had been effectuated through a denial of procedural due process. Assertion of the underlying right to procedural due process was deemed sufficient for § 1343(3) jurisdiction. Recognizing the

far-reaching implications of this approach, subsequent decisions have cut back upon *Escalera's* broad scope. In *Lynch, supra,* the three-judge court rejected a deprivation of procedural due process as a basis for § 1343(3) jurisdiction where the matter claimed was monetary. *Escalera* was viewed in retrospect as a case involving a basic claim for "scarce" public housing, and thus more akin to liberty than property. 318 F. Supp. at 1114. The Court of Appeals then flatly rejected the notion that a lack of procedural due process in the taking of property provided civil rights jurisdiction. *Tichon v. Harder, supra*; *Tucker v. Maher*, 441 F.2d 740 (2d Cir. 1971).

While *Tichon* seemingly foreclosed the *Escalera* exception, it nonetheless kept alive the inquiry as to the impairment of underlying rights. While it refused to predicate jurisdiction on denial of procedural due process, the opinion did suggest that denial of a property right, such as a specific job, might present a liberty claim where the loss of the job impairs rights protected by the first eight amendments. Among examples given were discharges based on an employee's exercise of First Amendment rights, *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), or on the fact that he invoked his self-incrimination privilege, *Slochower v. Bd. of Higher Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1966). The consequential impairment of rights secured by the first eight amendments was distinguished from general Fourteenth Amendment due process and equal protection claims, which were viewed as having no independent jurisdictional significance.[1] *Tichon, supra,*

1. Whether the Second Circuit would deny § 1343(3) jurisdiction to all underlying equal protection claims is not entirely clear. While the language of *Tichon*, especially in note 5, is sweeping ("the equal protection clause having no independent jurisdictional significance"), one may wonder whether a jurisdictional statute intended to provide a federal forum for redress of racial injustices would be con-

strued to preclude consideration of a claim for a pure property right alleged to have been denied on racial grounds. It may be that a distinction will be drawn between underlying claims of racial discrimination and discriminations that are simply arbitrary. *Cf.* Dougall v. Sugarman, 330 F.Supp. 265, 268 (S.D.N.Y. 1971) ("To hold otherwise would permit the City to dismiss an employee because

438 F.2d at 1399–1400 and n. 5; *see also* Roberge v. Philbrook, 313 F.Supp. 608, 612 (D.Vt.1970).

The inquiry suggested by *Tichon* compels some consideration of the merits of this case. These plaintiffs make two broad claims. The first is that denial of the loan based on the statutory one-year durational residency requirement impairs their constitutionally protected right to travel. *Cf.* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1969). Since it is unclear whether that right finds its protection in some of the first eight amendments or in the Fourteenth, *see* Shapiro v. Thompson, *supra*, at 666–671, 89 S.Ct. 1322 (Harlan, J., dissenting), the *Tichon* analysis is not easy to apply.

However, even assuming *arguendo* that the right to travel is protected by the first eight amendments, it does not follow that its relationship to the denial of a property right provides a basis for jurisdiction here. In distinguishing the consequential impairment of Fourteenth Amendment rights and those protected by amendments one through eight, *Tichon* postulated situations where the property right was denied *because* the underlying liberty right was exercised. In *Wieman, supra*, the employee lost his job because he exercised his First Amendment rights; in *Slochower, supra*, he was dismissed because he invoked the Fifth Amendment. In each of those instances, if the liberty right had not been exercised, the property right would not have been denied. Since the loss of property flowed directly from the assertion of basic civil rights, it was the ability to exercise those freedoms that

was directly at issue, and § 1343(3) jurisdiction was appropriate.

The case at hand, however, is different. Here, while the denial of the property right—the loan—arguably impairs the right to travel, there can be no claim that the exercise of that right is the reason for the loss of property. If these plaintiffs had not traveled, their position vis-a-vis the Foundation would be the same as it is now. Therefore, plaintiffs are not being penalized for the exercise of their constitutional right.[2]

Admittedly, the distinction here is a fine one. While the *Tichon* doctrine might be stretched to cover the case at hand, it seems unwise to do so. If pressed too far, the inquiry as to rights consequentially impaired can erode the entire distinction between property and liberty rights. If the *Hague* distinction is to be preserved, jurisdiction for assertion of underlying claims based on the first eight amendments should be limited to those situations where the loss of a property right occurs *because* a liberty right was exercised.

Plaintiffs' second claim on the merits is that the challenged regulation arbitrarily denies them a loan by barring them from acquiring status as residents as long as they are students. To the extent that this contention rests on underlying right to travel considerations, it fails to satisfy § 1343(3) requirements for the reasons outlined above. But the essential thrust of plaintiffs' attack on the regulation raises considerations quite apart from impairment of the right to travel. They assert that the regulation creates an arbitrary classification, one without rationality. The

of his race and yet offer him no opportunity for redress in the federal courts unless the matter in controversy satisfied the $10,000 jurisdictional requirement of § 1331.") Even if such a qualification were to be carved out of the apparent proscription of *Tichon*, it would not avail these plaintiffs. Their complaint is that the regulation is arbitrary in its classification, but no racial discrimination is alleged.

2. The propriety of § 1343(3) jurisdiction in Shapiro v. Thompson, *supra*, did not necessarily turn on the alleged denial of an underlying right to travel. If the *Eisen* and *Tichon* approach is to be maintained, jurisdiction in *Shapiro* can be explained only by considering that the basic claim being made—for welfare benefits—was essentially a liberty claim. Johnson v. Harder, *supra*.

regulation classifies those who come to Connecticut into two groups: those who start out as non-students, establish residence, and then become students; and those (like these plaintiffs) who are students from the day they arrive, and then seek to establish residence on some basis other than their status as students. The latter group cannot obtain loans. The claim is that the regulation is arbitrary in presumptively concluding that as long as a person is a student, he can never establish Connecticut residence, even on the basis of facts wholly independent of his student status. This claim may well raise substantial Fourteenth Amendment issues of due process and equal protection. Nevertheless these are underlying claims put forward in support of the basic claim to a property right, and *Tichon* forecloses use of the civil rights jurisdictional statute for such underlying claims.[3]

In Hague v. C.I.O. *supra*, Mr. Justice Stone stressed that the purpose of the civil rights jurisdictional statute was to provide federal courts with the ability to protect rights not susceptible of evaluation in money, such as the right to speak and the right to practice one's religion. Here, however, the basic right plaintiffs seek is clearly susceptible of monetary evaluation. The fact that it has constitutional underpinnings is not determinitive, for the plaintiffs in *Eisen* and *Tichon* also made similar contentions. If §§ 1331 and 1343(3) are to be kept distinct,[4] this is the type of case to which the liberty-property dichotomy should be applied. Consequently, as to the claims of these plaintiffs, § 1343(3) does not provide jurisdiction.

Whether jurisdiction could be based on § 1331 depends upon whether the complaint satisfied the $10,000 jurisdictional amount. The complaint makes no

3. There are two decisions of the Court of Appeals which apparently sustain § 1343 (3) jurisdiction where claims for money to be used for education were alleged to be denied in violation of the Equal Protection Clause. Johnson v. New York State Educ. Dept., 449 F.2d 871 (2d Cir. 1971); McMillan v. Bd. of Educ., 430 F.2d 1145 (2d Cir. 1970). In *Johnson* the District Court, which had denied relief on the merits, had considered jurisdiction to be doubtful, 319 F.Supp. 271, 278 (S.D.N.Y.1970). The Court of Appeals also denied relief on the merits without any discussion of jurisdiction. However, the court did point out that plaintiffs were welfare recipients, 449 F.2d at 880 n. 13, perhaps indicating that the monetary claims, which sought the cost of textbooks, could be considered liberty claims under Johnson v. Harder, *supra*. In *McMillan* the claim was deemed appropriate for a three-judge district court, again without discussion of jurisdiction. Since the claim sought funds to pay the special costs of educating brain injured children, it too may be only an extension of Johnson v. Harder, *supra*, since the special needs of these hard-pressed families made their claim take on aspects of subsistence. Since these cases make no mention of jurisdiction, there seems to be no reason to assume the Court of Appeals meant to carve out from the sweeping language of *Tichon* an exception for all

underlying equal protection claims advanced in support of claims for money to be used for education.

4. Whether the distinction is to be preserved may well become clear when the Supreme Court decides Lynch v. Household Finance Corp., *supra*. It could be argued that their decision has been foreshadowed by Swarb v. Lennox, 405 U.S. 767, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). In *Swarb* a three-judge district court upheld § 1343 (3) jurisdiction of a claim that Pennsylvania's cognovit note procedures deprived plaintiffs of property without due process of law. However, there are several reasons why the Supreme Court decision is not necessarily a rejection of *Lynch* or *Eisen*. First, jurisdiction was properly grounded on § 1331 since the judgments against some of the plaintiffs exceeded $10,000. Second, the class held entitled to relief in the District Court were those earning less than $10,000 a year; hence a claim for subsistence may have been involved. Third, the Supreme Court decision only rejected plaintiffs' claim for relief for an additional class; it did not rule on the merits of the relief already granted by the lower court since the state took no cross appeal. These factors render *Swarb* an unlikely instrument for the *sub silentio* overruling of Hague v. C.I.O., *supra*.

allegations that would meet this requirement, and even if the entire loan (rather than the loan upon favorable terms) is at issue, such loans cannot exceed $10,000.[5]

The complaint must therefore be dismissed for lack of federal jurisdiction.

## DECISION ON MOTION TO CONVENE THREE-JUDGE COURT

■ Upon consideration of plaintiffs' motion to convene a statutory three-judge court pursuant to 28 U.S.C. § 2281, this court on March 8, 1972, endeavored to follow the teachings of Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) and its progeny, and having concluded that the complaint alleged denials of property rather than personal liberty claims, ordered the complaint dismissed for lack of jurisdiction under 28 U.S.C. § 1343(3). Subsequently, the Supreme Court in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (Mar. 23, 1972) decided that § 1343(3) jurisdiction is not defeated by the presentation of property claims. Accordingly, the court has vacated the judgment of dismissal pursuant to Fed.R.Civ.P. 60(b)(6). The issue now is the propriety of a three-judge court.

Defendants object to the convening of a three-judge court, claiming that (1) plaintiffs are not challenging the constitutionality of a state statute, (2) their attack upon a regulation of the Connecticut Student Loan Foundation (CSLF) is insufficient to invoke § 2281, and (3) the CSLF is not an "administrative board or commission acting under State statutes" nor are its officials state "officer[s]" within the meaning of § 2281.

■ As to the first of these grounds, the complaint clearly alleges that the plaintiffs were in the past denied loans for failure to meet the one-year residency requirement of Conn.Gen.Stat. § 10–361. Their prayer for relief seeks a declaration as to the constitutionality of that statute. The fact that plaintiffs have now resided in Connecticut for over one year does not moot this challenge, though it does render somewhat uncertain whether, should they prevail on the merits, they would be entitled to injunctive relief.

■ Even if the complaint is viewed, *arguendo*, as solely directed at the CSLF regulation which provides that Connecticut residence cannot be gained while one is a student at an institution of higher learning, defendants' second objection is no bar. An attack upon the constitutionality of regulations of statewide applicability is sufficient to invoke the statutory three-judge court. See, e. g., Irving v. Breazeale, 400 F.2d 228, 231 (9th Cir. 1968); Davis v. Caldwell, 53 F.R.D. 373, 375 (N.D.Ga.1971).

■ Defendants' final objection is similarly without merit. The CSLF is not only created by statute (Conn.Gen. Stat. § 10–358), but the composition of its board of directors (§ 10–360) and the powers of that board (§ 10–361) are also set out in Connecticut law. The challenged regulation was promulgated pursuant to § 10–361(e), which gives the board of directors the power to devise rules for the administration of the loan program. Included in the comprehensive statutory authorization for CSLF activities are the abilities to borrow from the state general fund, § 10–368b, and to raise money through the issuance of

---

5. Conn.Gen.Stat. § 10–361(a) provides that the total of the loans made to a student in any academic year that may be covered by loan insurance may not exceed $1500; the aggregate insured unpaid principal amount of all such insured loans made to any student may not exceed $7500. *See also* 20 U.S.C. § 1074(a).

bonds, § 10–368c, which become "general obligations of the state." § 10–368d. The CSLF is clearly "functioning pursuant to a statewide policy and performing a state function". Moody v. Flowers, 387 U.S. 97, 102, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967).[1]

 Defendants urge that under Connecticut law CSLF is not considered a state agency nor are its employees considered state officers for many purposes such as internal record keeping and retirement benefits. Certainly Connecticut can decide for itself how many or how few of the requirements and benefits applicable to its regular state agencies will also apply to an entity such as the CSLF. But a state decision to let CSLF function without characteristics applicable to other state agencies cannot permit a federal district court to dispense with the three-judge court requirement of federal law in hearing a request for injunctive relief against enforcement of the state statute and the state regulation under which this agency carries out its statutorily imposed functions.

 Defendants also contest the substantiality of the plaintiffs' constitutional issues. But the validity of a durational residence requirement for student loan benefits poses a substantial question in light of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), as does the attack upon the regulation's conclusive presumption against acquiring state residence while in student status in light of decisions like Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

Accordingly, the motion to convene a three-judge court is granted.

---

[1] Of minor but passing interest is the fact that the emblem on the letterhead of the CSLF, on which was written the rejection of plaintiffs' loan application, displays the Connecticut state seal.