GEORGE E. WATERMAN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 40040.)

GEORGE E. WATERMAN, as Guardian ad Litem of RICHARD WATERMAN, an Infant, Claimant *v.* STATE OF NEW YORK, Defendant. (Claim No. 40041.)

RUTH WATERMAN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 40042.)

ROGER H. WILLIAMS, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 40043.)

Court of Claims, August 29, 1962.

*Williams & Ray* (*Roger H. Williams* of counsel), for claimants. *Louis J. Lefkowitz, Attorney-General* (*Grace K. Banoff* of counsel), for defendant.

JOHN P. GUALTIERI, J. There are before the court two motions, one by the claimants for an examination before trial of a State employee; the second, brought on by the Attorney-General for the dismissal of all four claims.

On November 22, 1960, judgments totaling $61,189.77 in favor of the claimants, Waterman, were docketed in the office of the Clerk of the Court of Claims; these awards resulted from a Thruway accident which occurred on June 29, 1957, resulting in personal injuries.

On December 6, 1960, the defendant appealed from said judgments to the Appellate Division, Fourth Department. On February 24, 1961, the present claimants made a motion in the Appellate Division returnable March 28, 1961, for a dismissal of the State's appeal on the ground that the Attorney-General had failed to perfect it within the time prescribed by law.

The Attorney-General countered by making a motion to vacate the judgments in favor of the claimants. In opposition to the claimants' motion for dismissal of the appeal and in support of its motion to vacate the judgments, the defendants filed with the court affidavits disclosing that the court stenographer, Samuel C. Goldner, who took the trial minutes in the negligence actions, had lost his notes and was thus unable to furnish the appellant, State of New York, with a copy of the official minutes.

It appears that sometime in early November of 1960, the stenographer who lived in Baldwin, Long Island, planned to take

his notes to his home for the purpose of expediting the preparation of the transcript; the minutes were lost in the process. The stenographer thinks that they may have slipped out of his brief case while traveling to his home on the Long Island Rail Road.

The Appellate Division (13 A D 2d 619) by order dated March 28, 1961, granted the State's motion to vacate the judgments and directed that the claims be retried; however, it provided in its order that any party to the claims could move to vacate the order vacating the judgments, on or before June 27, 1961, if by that date it could be " found that an adequate record can be presented to this court ".

On May 2, 1961, an order of the Court of Claims restored the cases to the calendar, granted a preference and directed a retrial to commence June 19, 1961; the second trial commenced on June 19, 1961, and concluded on June 21, 1961. Judgments were again rendered in favor of the claimants in substantially the same amounts awarded in the first trial, and were entered in the office of the Clerk of the Court of Claims on November 8, 1961.

The State filed no appeal from these second judgments and the claimants were paid the awards made to them.

On January 18, 1962, the claimants, Waterman, filed the present claims against the State alleging in said claims that because of the negligence of the court stenographer in losing his original notes they sustained damage by reason of the expenses incurred in the second trial and for loss of interest from the date of the first judgments entered November 22, 1960 to November 8, 1961, the date of entry of judgments following the second trial.

In a fourth claim filed simultaneously with the Waterman claims the claimant, Roger H. Williams, also alleging negligence of the court stenographer in losing the minutes, makes a claim for the additional legal services he was obliged to render subsequent to the first trial by reason of the said employee's negligence.

We will consider the State's motion for dismissal of the claims first because if the court concludes to grant that motion, the claimants' motion for an examination before trial becomes academic.

The grounds relied upon by the Attorney-General as a basis for its motion for dismissal may be stated as follows:

1. That because the court stenographer is an officer of the court both he and the State are protected from civil liability under the doctrine of judicial immunity; and that the State, by waiving its sovereign immunity under the provisions of the

Court of Claims Act never intended to surrender its immunity in the case of judicial officers.

2. That even assuming the stenographer's negligence and the State's liability therefor, under the doctrine of *respondeat superior*, that, nevertheless, any damages suffered by the claimants were contingent upon the happening of an uncertain event, namely, an affirmance by the Appellate Division of the judgments, even if the minutes had been available.

3. That the court has no jurisdiction of the claims because they were not timely filed.

4. That the claim of Attorney Roger H. Williams for legal services he was obliged to render by reason of the loss of the stenographer's minutes must be dismissed in any event because such a claim should have been included in the claims of his clients, Waterman, for whom the services were rendered.

It is the holding of this court that the doctrine of judicial immunity has no application here and cannot be successfully asserted to defeat these claims.

The rule granting immunity to judicial officers is one of the oldest in English and American jurisprudence. It protects a judicial officer when there is involved a judicial act calling for the exercise of judgment, discretion, analysis and determination. (*Lange* v. *Benedict,* 73 N. Y. 12 [1878]; *East Riv. Gas-Light Co.* v. *Donnelly,* 93 N. Y. 557, 559, affg. 25 Hun 614 [1883].)

Thus, to be immune from civil responsibility the judicial officer involved must be doing something in the nature of a judicial function calling for weighing facts and evidence, considering legal principles, and making a decision thereon.

The Attorney-General argues that because section 290 of the Judiciary Law provides that the stenographer is " an officer of the court " that *ipso facto* the acts of the stenographer are protected by the judicial immunity rule and that the State cannot be held liable in these claims.

That is not so. A court stenographer, notwithstanding the fact that he is an officer of the court, by the very nature of his work performs no judicial function. His duties are purely ministerial and administrative; he has no power of decision. The doctrine has no application to the facts with which we are confronted here. (*Evarts* v. *Kiehl,* 102 N. Y. 296 [1886]; *Luckie* v. *Goddard,* 171 Misc. 774 [1939].)

*Koeppe* v. *City of Hudson* (276 App. Div. 443 [1950]), cited in the Attorney-General's brief is clearly distinguishable. There a City Judge issued a warrant without an information being laid before him. The court held that the defendant, City of Hudson,

was not liable; but in that case the issuance of a warrant was a judicial act; whether the act was right or wrong it nevertheless was done by a person acting as a Judge.

It is our ruling that the stenographer was a State employee; that the doctrine of judicial immunity has no application; and that therefore the doctrine of *respondeat superior* would apply.

To hold otherwise would place an unreasonable and improper limitation on the waiver of immunity provisions in the Court of Claims Act. In the early days of the development of the English common law, from which our jurisprudence was derived, the Sovereign or King was clothed with absolute and supreme power. He was the executive; he was the legislator; he was the Judge. When we talk about the sovereignty of the State of New York we talk of these powers of the Sovereign.

A Sovereign who or which fully and generously waives its immunity as the State of New York did here presumably makes such waiver without reservation in any of the three areas of government; executive, legislative and judicial. There was no such reservation in the provisions of the Court of Claims Act.

Any qualification of or reservation to the waiver of the State's immunity must be found in some underlying and overpowering principle of law. The only such principle urged here is the doctrine of judicial immunity which we hold has no application in this situation.

The State further argues that at the time of the alleged tort, the stenographer was not acting within the scope of his authority and that therefore the doctrine of *respondeat superior* does not apply. Section 297 of the Judiciary Law directs that the stenographic notes " must be carefully preserved by the stenographer ". It is contended on behalf of the defendant that by taking or attempting to take the notes home, the stenographer was violating section 297 and therefore his doing so was in the nature of an *ultra vires* act.

We cannot accept the State's position in this regard. The Judiciary Law simply provides that the minutes must be carefully preserved and we cannot read into the statute that they had to be carefully preserved in a State office. Public officials are known to take their work and their problems home with them. No rule or law to the contrary has been called to our attention.

Our conclusion that this is a tort for which the State would be liable under the doctrine of *respondeat superior* does not, however, end the legal problems confronting these claimants.

Their claims are predicated upon negligence. For the purpose of our discussion we shall assume, as we must on this motion, that negligence on the part of the State can be established upon

a trial. That is not enough; it is incumbent upon the claimants to show that the negligent act complained of is the proximate cause of the damages asserted here by these claimants.

Proximate cause has been variously defined by the courts but simply stated, the rule is that the claimants must establish that their damages were the natural and probable consequences of the negligent or wrongful act.

Our inquiry therefore must be whether under the rules of law established by the courts, the damages sustained by the claimants were the "natural and probable consequence" of the loss of the minutes by the State employee.

Had the minutes been available to the appellant, the State of New York, and a proper record presented to the Appellate Division it is at least conjectural what the Appellate Division would have done on the appeal. It could, of course, have affirmed the judgments; it also could have reversed the Court of Claims' decision and dismissed the claims; or it could have reversed the judgments and sent the claims back for a new trial.

The damages of the claimants would not therefore flow naturally from the loss of the minutes. An appeal was pending. Whether or not there would be any loss would depend upon what action the Appellate Division took after hearing the appeal upon an adequate record.

The rule of proximate cause under these circumstances was defined in *25 Fifth Ave. Management Co.* v. *Ivor B. Clark, Inc.* (280 App. Div. 205 [1952]). There the plaintiff sued the defendant for breach of contract. Notwithstanding the breach, it appeared that the transaction between the parties was not complete until it had been approved by the court. The court held that the fact that the agreement was subject to the approval of the Supreme Court made the plaintiff's damages "conjectural and speculative". The court said at page 208:

"Plaintiff's proof on the subject of damages was required to establish a loss that flowed naturally and directly from defendant's breach of its engagement. The proof in this regard lacked that standard of reasonable certainty required to establish damages. * * * The fact of damage must be susceptible of ascertainment in some manner other than mere conjecture or guess work * * *.

"The fact that a Supreme Court Justice * * * would eventually have ratified the proposal was wholly conjectural."

*Cole* v. *Vincent* (229 App. Div. 520 [1930]) is another decision which discusses the rule of proximate cause in situations like that in the case at bar. It involved a negligence action against the County Clerk of Oswego County and an abstract company.

The County Clerk had erroneously docketed a judgment against the plaintiff's grantor. The abstract company did not discover the judgment and certified that there were no liens against the property purchased by the plaintiff. At the completion of plaintiff's case both defendants rested and the court directed a judgment against both. The Fourth Department reversed, holding that there was a jury question as to the liability of the County Clerk, the question of fact being whether or not the conduct of the abstract company in failing to find the judgment and show it on the abstract was such an intervening cause as could have been reasonably anticipated by the County Clerk.

In discussing the rule of proximate cause the court used the following language (pp. 524-525): "But if the consequences were only made possible by the intervening act of a third party which could *not* have been reasonably anticipated, then the sequential relation between act and result would not be regarded as so established as to come within the rule."

Thus in the case at bar we would have to hold that at the time the stenographer misplaced his notes he knew or should have known that the Appellate Division would not reverse the judgments; or to state it conversely, that he knew or should have known that as a natural consequence of his negligence the Appellate Division would have affirmed the judgments making the expense of the second trial unnecessary.

We feel that to so hold would be stretching the rule of proximate cause beyond any limits heretofore fixed by the courts. We are constrained to hold as a matter of law that the damages sustained by these claimants were not the natural and probable results of the stenographer's negligence.

There is another barrier facing the claimants. Where a stenographer's minutes or parts of them become unavailable for any reason such as the death of a stenographer or the loss of his notes a new trial is not automatic.

It is the function of the Judge to certify a proper record to the appellate court. If the minutes are unavailable he may rely upon his own notes, he may obtain the aid of the attorneys for the parties by affidavit or otherwise and thus transmit a record which will enable the appellate court to review the questions involved upon the appeal. (*Lidgerwood Mfg. Co.* v. *Rogers,* 4 N. Y. S. 716 [1889]; *Walker* v. *Baermann,* 44 App. Div. 587 [1899]; *Jenkins* v. *Bishop,* 133 App. Div. 517 [1909]; *Silverblatt* v. *Rosenberger,* 134 N. Y. S. 579 [1912]; *Taylor* v. *Allen,* 159 N. Y. S. 699 [1916]; *Lehman-Bleyer Paper Co.* v. *Public Bank of New York City,* 166 N. Y. S. 707 [1917]; *Solomon* v. *Jacfin Co.,* 147 Misc. 215 [1933]; *Kay* v. *Kay,* 277 App. Div. 797 [1950].)

Notwithstanding the loss of the stenographer's notes, the parties to the appeal, both the appellant and the respondents (the claimants here) had the opportunity to attempt to prepare and agree upon a suitable record to be certified by the Judge. The order of the Appellate Division expressly made that avenue available to them to avoid the necessity of a second trial; it contained a provision that its order directing a new trial could be vacated by a certain specified date " if it is found that an adequate record can be presented to this court ".

If it is the law, and we conclude that it is, that a record on appeal may be prepared for an appellate court without the stenographer's minutes, the rule of proximate cause again would bar a recovery. To do otherwise, we would have to hold that the stenographer should have foreseen that in what appears to have been an ordinary highway negligence action, the participants in the trial would not be able, by the aid of their notes or recollection, to agree on sufficient facts to certify the questions to be reviewed.

It matters little whether we apply the test of foreseeability, or whether we call the failure of the parties to agree on a record an intervening cause breaking the chain of causation. The result is the same and bars any recovery on the theory of negligence.

The conclusion we have reached is based upon the generally accepted standards defining the limits of liability in a negligence action and the proper application of the rule of proximate cause.

To allow these claims to prevail would open up a whole new avenue of litigation in an area heretofore nonexistent. If a stenographer's negligence in losing his notes can enable claimants to recover interest from the date of the original judgment to the date of a possible subsequent judgment then it would logically follow that a stenographer who negligently or unduly delays transcribing his notes and thus delays the entry of judgment could be sued by reason of such delay by any party claiming to lose monetary interest thereby.

Unfortunately, under our system of jurisprudence, litigation is all too frequently subjected to delays and a multitude of problems in processing cases through the courts. The courts and the legal profession are aware of these problems and are constantly on the alert to minimize or eliminate them. Practical common sense would seem to dictate that the result we have reached under established legal standards is a sound one.

Having reached this conclusion it is perhaps unnecessary to rule on the Attorney-General's motion for dismissal upon the ground that the claims were not filed within the 90-day period prescribed by the Court of Claims Act. Nevertheless, because

the issue has been raised, we feel that we should pass upon this phase of the State's motion.

Subdivision 3 of section 10 of the act directs that claims founded in tort "shall be filed within ninety days after the accrual of such claim". Compliance with this section is mandatory. (*Undritz* v. *State of New York*, 39 N. Y. S. 2d 275 [1943]; *Baxter* v. *State of New York*, 189 Misc. 525 [1947]; *Joseph* v. *McVeigh*, 285 App. Div. 386 [1955].)

The stenographer lost his minutes early in November of 1960. The claimants had knowledge of this fact at least by March 15, 1961, when the Attorney-General's affidavits were served upon the claimants' attorney in connection with the motions.

It can be argued that the 90-day period started to run when they learned of the negligent loss of the minutes. However, because the order of the Appellate Division kept the matter open until June 27, 1961, the claimants can reasonably argue that until they actually went to trial a second time they did not know whether or not they would sustain any damage. On June 19, 1961, the second trial started and was completed on June 21, 1961. They certainly knew then that they were going to be damaged and it appears to this court that the 90-day period of limitation commenced at that time.

The second judgments were entered on November 8, 1961. These claims were filed on January 18, 1962, approximately seven months after they participated in the second trial.

The claimants argue that in certain situations the words "claim accrued" have been judicially construed to mean "damages accrued" (*Dufel* v. *State of New York*, 198 App. Div. 97 [1921]; *Paduano* v. *State of New York*, 203 App. Div. 503 [1922]), and that because they could not ascertain their full damages until the entry of judgments on November 8, 1961, they were entitled to file their claims within 90 days from that date.

*Paduano* v. *State of New York* (*supra*) involved Barge Canal water leaking into a stone quarry. The court held that the 90-day period did not commence until the plaintiffs discovered they were unable to operate their quarry by reason of the State's negligence.

*Dufel* v. *State of New York* (*supra*, p. 101) was a claim for damages for loss of crops by reason of the operation of a dam by the State. The court held that in that case the tort was "a continuous, but varying, trespass during the canal navigation season". The claimants could not know until the end of the navigation season how much damage had been done. The above decisions indicate that a peculiar rule applies in water cases

where there is continuing and unascertainable damage. That is not the situation here. The loss of the stenographer's minutes was a single isolated tortious act.

The court in *Dufel* v. *State of New York* recognized the distinction when it said at page 101: "These claims are not similar to negligence actions, causing personal injuries, in which the cause of action accrues when the wrongful act is committed, and the accrual of the cause of action does not await a full disclosure of the injuries and their extent."

The claimants knew at least by June 21, 1961, that they had gone through the expense of a second trial. The argument that they could not determine the exact amount in dollars and cents in interest they would lose from the entry of the first judgments to the entry of the second judgments is frivolous. That involved a simple mathematical computation and a general allegation in their claims demanding interest from the date of the first judgments would have sufficed.

In any ordinary tort case claimants seldom know the full extent of their medical and hospital bills. They cannot of course wait until these are fully ascertained before filing their claims or commencing their actions in accordance with the provisions of the law.

Nor do the claimants receive any help from the special rule adopted in contract cases (*Michael* v. *State of New York*, 63 N. Y. S. 2d 517 [1946]), where in certain situations the period of limitation does not commence until the State has prepared and submitted its final estimate and figures for payment to the contractor.

The court is compelled to rule therefore that these claims were not filed within the time prescribed by the Court of Claims Act and it is without jurisdiction to hear and determine them.

We shall not rule on the question raised by the Attorney-General in connection with the claim of Attorney Roger H. Williams who is claiming payment for extra legal services he was obliged to render because of the loss of the minutes. Ordinarily, of course, an attorney renders services for his clients and bills his clients for such services.

It would appear that the claim for these services should have properly been included in the attorney's clients' claims. It may well be, however, that Attorney Williams had a contract with his clients on a contingent basis and for that reason he cannot seek payment from them. Whether he can be reimbursed for these additional services in a direct claim against the State, if it was a contingent contractual arrangement, we shall not determine in

view of the decisions hereinbefore reached and the insufficient facts before the court upon which to make a proper determination.

The State's motion for dismissal of these four claims is hereby granted; the motion of the claimants for an examination before trial is denied.