Anna **QUITORIANO**, Plaintiff,

v.

**RAFF & BECKER, LLP.,** Defendant.

**No. 09 Civ. 5507(DC).**

United States District Court,
S.D. New York.

Dec. 29, 2009.

*Auth.*, No. 95 Civ. 4779, 1999 WL 51814, at      *13 (E.D.N.Y. Jan. 14, 1999) (same).

Anna Quitoriano, Staten Island, NY, Plaintiff Pro Se.

Barnes, Iaccarino & Shepherd, LLP by Danielle M. Carney, Esq., Hempstead, NY, Attorneys for Defendant.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In 1971, the Equal Employment Opportunity Commission (the "EEOC") sued Local Union 28 of the Sheet Metal Workers' International Association and three other unions in this Court for discriminatory practices against minority workers. *See, e.g., EEOC v. Local 638 & Local 28*, 86 Empl. Prac. Dec. (CCH) ¶ 41,977, at 3, 2005 WL 823915 (S.D.N.Y. Apr. 8, 2005). In 1975, Judge Henry Werker issued an order requiring Local 28 to implement procedures to eliminate discrimination and achieve a certain non-white membership percentage. *EEOC v. Local 638 & Local 28*, 12 Fair Empl. Prac. Cas. (BNA) 733, ¶¶ 1–12 (S.D.N.Y. Aug. 28, 1975) (the "1975 Order"). The Court appointed David Raff, an attorney, to act as "Administrator" to implement the 1975 Order.[1] *Id.* ¶ 13.

In this case, *pro se* plaintiff Anna Quitoriano, a member of Local 28, sues Raff's law firm, Raff & Becker, LLP (the "Firm") for employment discrimination. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's amended complaint (the "Complaint") for failure to state a claim upon which relief may be granted.

The motion is granted because the Firm is not a proper defendant under the civil

---

1. More recent decisions and court documents refer to Raff as "Special Master" rather than "Administrator," but his role has not changed. *See EEOC v. Local 638*, 13 F.Supp.2d 453, 456 n. 1 (S.D.N.Y.1998) ("The original [Order and Judgment] used the term 'administrator' to refer to the individual appointed to oversee this litigation, while [Fed. R.Civ.P. 53] uses the term 'Special Master.' Both terms refer to the same individual, David Raff, and are used interchangeably in this opinion."). Hereinafter, I will refer to Raff as the "Special Master."

rights laws in question, and to the extent that plaintiff complains about Special Master Raff's actions, he is judicially immune.

## BACKGROUND

### A. The Facts

The facts are drawn primarily from the Complaint and exhibits attached thereto. I also take judicial notice of certain facts drawn from the decisions and orders in the earlier litigation. For the purposes of this motion, the facts are construed in the light most favorable to Quitoriano.

#### 1. The Parties

Quitoriano is 44 years old, Caucasian, Roman Catholic, and an American citizen. (Am. Compl. 3). She has been a member of Local 28 since 1986. (Am. Compl., Attach. 2). Since approximately 2003, Quitoriano has relied on a court-ordered job referral system (the "Voluntary Referral Hall") as a means of receiving temporary on-site employment in the sheet metal industry. (*See* Am. Compl., Attach. 1). The last assignment that she accepted through the Voluntary Referral Hall ended on February 27, 2009. (*Id.*). Quitoriano is currently unemployed. (Am. Compl., Attach. 2).

The Firm is based in New York, New York, and is a limited liability partnership. (Def.'s Mot. to Dismiss 12 n. 3). The firm consists of two partners and four employees. (*Id.*).

#### 2. The Voluntary Referral Hall System

The 1975 Order granted Raff a broad range of powers and duties. In particular, it authorized him to "establish procedures and practices for work referral and employment" and conduct investigations of Local 28 and its Apprentice Program. 1975 Order ¶ 14(f), (h). The Court also authorized Raff to:

hear and determine all complaints concerning the operation of this Order and the Program and shall decide any questions of interpretation and claims of violations of this Order and the Program, acting either on his own initiative or at the request of any party herein or any interested person. All decisions of the Administrator shall be in writing and shall be appealable to the Court.

*Id.* ¶ 15. The Court fixed a rate of compensation for Raff's services and decreed that he would "remain in office for such time as the Court shall determine." *Id.* ¶ 20. To date, Raff continues to serve as Special Master. (Def.'s Mot. to Dismiss Ex. D).

In 1998, the Court mandated the creation of a voluntary job referral system that would maintain a list of Local 28 journeypersons and refer those with the least hours worked to contractors for work placement. *Local 638 & Local 28*, 13 F.Supp.2d at 466. The Voluntary Referral Hall was eventually created five years later by a stipulation so ordered by Judge Carter, who had taken over the case from Judge Werker. (*See* Def.'s Mot. to Dismiss Ex. D). Its purpose was to "function as a racially-neutral means of eliminating the hours disparity between white and nonwhite journeypersons." *Local 638 & Local 28*, 13 F.Supp.2d at 466–67. The Court assigned Raff the tasks of investigating and reporting the union's progress in implementing the Voluntary Referral Hall and supervising a Referral Hall monitor. *See id.* at 466–68. The Hall is currently run by an operator who maintains the list of journeypersons seeking work; a business manager; field monitors; Local 28 officials; and an "Office of Court Compliance." (Def.'s Mot. to Dismiss Ex. D, App. A).

Local 28 members who choose to submit their names to the Voluntary Referral Hall

are subject to its rules. (Def.'s Mot. to Dismiss Ex. D). The rules construct an elaborate method for ranking journeypersons and referring them to contractors. Put simply, the operator calls members at a certain time each day to match them with contractors in the order that their names appear on the Hall's list. (*Id.*, App. A ¶ 16). If a member refuses a job offered through the Hall, she loses her place on the list and is dropped to the bottom of it. (*Id.* ¶ 21).

The current version of the Voluntary Referral Hall rules describes Raff's supervisory duties and reaffirms his mandate to hear and determine complaints from Local 28 members regarding the "interpretation, application, administration or implementation of the Hall Rules and Procedures." (*Id.* ¶ 35).

### 3. *The Firm's Role*

Plaintiff alleges that the Firm "oversee[s]" the Voluntary Referral Hall. (Am. Compl. 2). The Firm's sole connection to this case is through Raff, who is one of its named partners. The Firm is not named anywhere in the 1975 Order and does not appear to be named in any subsequent court documents that have been filed pursuant to the aforementioned litigation.

### B. *Prior Proceedings*

#### 1. *Internal Union Proceedings*

On January 20, 2009, plaintiff met with Local 28 President and Business Manager Michael Belluzzi to discuss her belief that she was being discriminated against under Title VII and the EPA. (Pl.'s Affirm. in Opp'n, Attach. at 8–9). She states that Belluzzi "was impressed but had to adhere to Southern District Federal Court Rules." (*Id.* at 9). It does not appear that plaintiff pursued a remedy through the procedures used by Local 28 to address its members' complaints. These procedures include the system created by the Voluntary Referral

Hall rules, which requires members to air their grievances by bringing them to Special Master Raff. (*See* Def.'s Mot. to Dismiss Ex. D, App. A ¶ 35).

#### 2. *Administrative Proceedings*

Plaintiff filed charges with the EEOC on April 21, 2009. (Am. Compl. 4). The EEOC dismissed her charges and issued a right to sue letter on June 29, 2009. (Am. Compl., Attach.).

#### 3. *Federal and State Litigation*

Plaintiff filed a Notice of Claim against defendant in the Civil Court of the City of New York, Small Claims Part, in Staten Island on March 11, 2009. (Def.'s Mot. to Dismiss Ex. A). The Notice of Claim stated that plaintiff sought damages for "breach of agreement" and violations of "EEOC law." (*Id.*). Defendant removed this action to federal court in the Eastern District of New York on March 23, 2009, and filed an answer to plaintiff's complaint on March 26, 2009. Defendant then filed a motion to change venue to the Southern District of New York. The motion was granted.

This Court accepted plaintiff's amended complaint on July 27, 2009. Quitoriano contends that the Firm discriminated against her based on her race, gender, national origin, age, color, and religion. She alleges that the Firm failed to hire her, terminated her employment, failed to promote her, created unequal terms and conditions of her employment, retaliated against her, and engaged in "blacklisting." She asserts:

> Judge Carter appointed Raff & Becker to oversee a Referral Hall Hiring System for L.U. # 28 members. The referral has been corrupt in past and present. Not run properly.

(Am. Compl. 2). She brings this action pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621–634 *et seq.* (the "ADEA"); and the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA").

In essence, plaintiff's claim is one of reverse discrimination: she has been the victim of discrimination at the hands of a court-ordered system meant to remedy past discrimination. Quitoriano alleges that beginning in 2001, she began to lose hours to "less educated, unskilled, unemployable, non-English speaking, [males]...." (Am. Compl., Attach. at 3). Quitoriano attributes her lack of job opportunities to Raff's allegedly improper supervision of the Voluntary Referral Hall, but none of the few incidents [2] that plaintiff describes as indicative of discrimination involve Raff or the Firm. (*See* Am. Compl., Attach., Saunders Letter).

This motion followed.

### DISCUSSION

The Firm moves to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that (1) as a court-appointed Special Master, Raff had judicial immunity; (2) in the alternative, because no employment relationship existed between itself and plaintiff as a matter of law, the Firm cannot be held liable for plaintiff's employment discrimination claims; (3) even if defendant qualifies as plaintiff's employer under Title VII, the ADEA, and the EPA, plaintiff fails to state a claim upon which relief can be granted; and (4) plaintiff did not follow the court-ordered protocol for addressing union member grievances with the Voluntary Referral Hall. Because the first two arguments are dispositive, I do not address the remaining arguments.

### A. *Standard on a Motion to Dismiss*

A proper pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The plaintiff is not required to include detailed factual assertions in her complaint, but she must provide factual content sufficient to "state a claim to relief that is plausible on its face," such that the court could reasonably infer that the defendant is liable for the acts alleged. *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). This determination should be context-specific and draw on the court's "judicial experience and common sense." *Id.* at 1950.

The court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). At the outset of deciding a motion to dismiss, the court may identify unsupported

---

2. For instance, on September 10, 2008, plaintiff received a call from the Voluntary Referral Hall operator, who offered her five days of work, which she declined because the hiring contractor would not guarantee that she would receive "union benefits." (Am. Compl., Attach., Saunders Letter 3). The operator told her that she was being moved to the bottom of the list and would have to discuss the matter with Saunders. (*Id.*). Plaintiff attempted to call Saunders twice but was unable to reach him. (*Id.*). Plaintiff alleges that this incident is indicative of discriminatory behavior by the Voluntary Referral Hall. (*Id.* at 4).

legal conclusions contained in the pleadings that are not entitled to an assumption of truth. *Id.* at 1950. The court may then determine whether there are any well-pleaded factual allegations contained in the complaint that are not just conceivable but plausibly suggest an entitlement to relief. *Id.* If not, the motion to dismiss will succeed. *See id.* As plaintiff is a *pro se* litigant, her pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

### B. *The Firm's Liability*

The amended complaint names the Firm as the defendant, without alleging any facts connecting it to Raff. It appears that plaintiff is proceeding on a theory that the Firm is vicariously liable for alleged wrongdoing on Raff's part in his role as Special Master. For the purposes of this analysis, I assume that the Firm is responsible for Raff's actions as Special Master and examine the Firm's arguments regarding judicial immunity and employer liability under the applicable case law and statutes. As the Firm has no role independent of Raff's actions, the Firm can be liable only if Raff is liable.

### 1. *Judicial Immunity*

#### a. *Applicable Law*

■ Under the doctrine of judicial immunity, judges and certain judicial authorities are exempt from civil liability for acts undertaken in furtherance of their judicial functions. *E.g., Austern v. Chi. Bd. Options Exch., Inc.,* 898 F.2d 882, 885 (2d Cir.1990) (citing *Bradley v. Fisher,* 80 U.S. 335, 347, 13 Wall. 335, 20 L.Ed. 646 (1871)). The doctrine is based on a fear that exposure to potential damages liability might impair the impartiality and independence of the judiciary. *Antoine v. Byers & Anderson,* 508 U.S. 429, 436, 113

S.Ct. 2167, 124 L.Ed.2d 391 (1993). "[T]he 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Id.* at 433 n. 8, 113 S.Ct. 2167 (holding that court reporters are not protected by judicial immunity because their function is not sufficiently adjudicatory) (citing *Burns v. Reed,* 500 U.S. 478, 500, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (Scalia, J., concurring in part and dissenting in part)).

■ Judicial immunity extends to individuals beyond the judiciary when their actions are "functionally comparable" to those of judges. *Id.* at 435–36, 113 S.Ct. 2167 (citing *Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). At common law, judicial immunity extended to certain private citizens, particularly jurors and arbitrators. *Id.* at 433 n. 8, 113 S.Ct. 2167. Other examples of persons whose functions have been deemed quasi-judicial include commissioners appointed to appraise damages when property is taken under the right of eminent domain; members of town boards in determining the allowance of claims; prosecutors; and law clerks. *See id.*; *Imbler,* 424 U.S. at 425, 96 S.Ct. 984; *Rodriguez v. Weprin,* 116 F.3d 62, 67 (2d Cir.1997).

In the context of at least one group of non-judicial actors—prosecutors—the Supreme Court has held that even tasks that would seem to be purely administrative (such as information-system management and training attorneys to share information), as opposed to quasi-judicial, are not purely administrative and are covered by absolute immunity so long as the actions pertain to the prosecutor's advocacy function. *See Van de Kamp v. Goldstein,* —— U.S. ——, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009). In granting immunity, the Court distinguished these advocacy-related func-

tions from purely administrative actions (which would not be covered by absolute immunity) on the ground that the former "necessarily require legal knowledge and the exercise of related discretion." *Id.* at 862. The Second Circuit recently applied *Van de Kamp* to extend judicial immunity to prosecutors handling post-trial challenges to a criminal conviction. The court found that the prosecutors' acts (requesting DNA testing of crime scene evidence), which could be construed as administrative or investigative, also required legal knowledge and the exercise of related discretion and therefore were covered by judicial immunity. *Warney v. Monroe County*, 587 F.3d 113, 124 (2d Cir.2009).

While the Supreme Court has not specifically addressed the question of whether judicial immunity applies to court-appointed officials, the Second Circuit has granted such individuals absolute immunity in the exercise of their judicially mandated duties. *See Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72–73 (2d Cir.1968) (extending immunity to court-appointed receiver and noting that he was "doing no more and no less than to carry out an explicit order, fair and regular on its face, by the appointing court"); *Anderson v. Conboy*, No. 94 Civ. 9159(CSH), 1997 WL 177890, at *6, 1997 U.S. Dist. LEXIS 4832, at *17 (S.D.N.Y. Apr. 14, 1997), *rev'd on other grounds*, 156 F.3d 167 (2d Cir.1998). In granting such individuals absolute immunity, courts have focused on whether the person derived his powers and responsibilities from judicial appointment; the nature of the appointed duties (whether the court relies on the officer to assist it in its judicial responsibilities); and whether the official's actions were within the scope of his quasi-judicial duties. *See Anderson*, 1997 WL 177890, at **6–7, 1997 U.S. Dist. LEXIS 4832, at **17–19; *Dilacio v. N.Y. City Dist. Council of the United Bhd. of Carpenters*, 593 F.Supp.2d 571, 578–79 (S.D.N.Y.2008).

If an individual's duties do not require him to exercise discretionary judgment but rather are "purely ministerial and administrative" in nature, he will not receive the protection of judicial immunity. *Antoine*, 508 U.S. at 437 n. 11, 113 S.Ct. 2167 (quoting *Waterman v. State*, 35 Misc.2d 954, 232 N.Y.S.2d 22, 25 (Ct.Cl. 1962), *rev'd on other grounds*, 19 A.D.2d 264, 241 N.Y.S.2d 314 (1963)). Nor will the individual receive immunity if he is shown to have acted in a manner outside the scope of his official judicial duties. *See Anderson*, 1997 WL 177890, at **7–8, 1997 U.S. Dist. LEXIS 4832, at **21–22 ("Conceptually, if a court-appointed officer ... engaged in activities which the order of appointment neither authorized nor sanctioned, the officer would not be immune from liability, for the same reason that a judge is not immune for acts taken in the total absence of jurisdiction.") (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

In *Dilacio*, the court found that a court-appointed independent investigator, Callahan, was immune from civil liability. Callahan was appointed pursuant to a Consent Decree entered between the federal government and a union regarding union corruption and unfair job referrals. The court order directed Callahan to "investigate union corruption, recommend disciplinary charges, and make referrals for further corrective action." *Dilacio*, 593 F.Supp.2d at 578. In determining whether Callahan's functions were sufficiently discretionary to warrant immunity, the court found that his investigative duties were "derived from and intertwined with the Court's supervisory function under the Consent Decree" and noted that "[a]n Independent Investigator would be crippled in the exercise of those functions if union members could sue him for having been investigated." *Id.* at 579. The court stressed the connection between the

court's responsibility to enforce the Consent Decree and the investigator's mandate:

> "As a practical matter, implementation depends upon the appointment by the Court of an experienced, energetic and able individual from the private sector. The practical necessity of such [an] appointment extends to all comparable cases. But litigants and trial judges would be hard pressed to secure the assistance of able individuals in demanding cases, if those individuals had to worry about being sued for damages by persons or entities affected by their conduct in discharge of duties placed upon them by the courts. This is a policy consideration closely akin to that policy which grants immunity to judges."

*Id.* (quoting *Anderson*, 1997 WL 177890, at **7–8, 1997 U.S. Dist. LEXIS 4832, at **22–23). Because the court determined that the independent investigator's functions were quasi-judicial and fit within the policy justifications for the doctrine, it found in favor of absolute immunity.

### b. *Application*

■ The Firm argues that the complaint must be dismissed because Special Master Raff is judicially immune from civil liability. I agree.

Raff's duties as Special Master fall squarely within *Antoine's* description of the types of adjudicatory functions that are covered by quasi-judicial immunity. *See Antoine*, 508 U.S. at 433 n. 8, 113 S.Ct. 2167. His responsibilities are not purely administrative or ministerial: he is in charge of hearing disputes between union members and the Voluntary Referral Hall and ensuring that the system operates in a nondiscriminatory manner. (*See* Def.'s Mot. to Dismiss Ex. D, App. A). Such activities clearly require legal knowledge and the exercise of related discretion, which Raff, as an attorney who has supervised the system since its inception, is

qualified to perform. *Cf. Van de Kamp*, 129 S.Ct. at 862 (applying judicial immunity to certain administrative tasks performed by prosecutors); *Warney*, 587 F.3d at 124 (granting judicial immunity to prosecutors in their function as advocates in post-conviction collateral proceedings). In addition, plaintiff has not demonstrated that Raff acted in a manner "which the order of appointment neither authorized nor sanctioned." *See Anderson*, 1997 WL 177890, at **7–8, 1997 U.S. Dist. LEXIS 4832, at **21–22.

The fact that Raff's duties are inherently judicial is dispositive. In *Dilacio*, the court-appointed official who received judicial immunity was designated as an "investigator"; here, Raff is responsible not only for investigating Local 28's operations but also for hearing and determining complaints about the referral system. *EEOC v. Local 638*, 12 Fair Empl. Prac. Cas. (BNA) 733, ¶ 15 (S.D.N.Y. Aug. 28, 1975). The decidedly judicial nature of this duty makes the argument in favor of applying quasi-judicial immunity to this case even stronger than it was in *Dilacio*. Therefore, Raff's duties fit well within the parameters of the doctrine as it has been construed in this Circuit, and neither he nor the Firm can be held liable for actions taken to carry out those duties.

To the extent plaintiff claims that the hiring hall system has not operated properly or fairly, she must pursue whatever remedies are available under the procedures established by the *Local 638 & Local 28* litigation, which include appealing to the Court in that case. 1975 Order ¶ 15. Her recourse is not to file a separate lawsuit against Raff or the Firm.

### 2. *Employer Liability*

■ Even if judicial immunity does not apply here, the Firm is not liable as it is neither plaintiff's employer nor a labor

organization under the plain meaning of the relevant statutes. In addition, the amended complaint does not allege that the Firm has enough employees to qualify as an employer under Title VII or the ADEA.

### a. *Applicable Law*

#### 1. *Title VII*

It is an "unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Id.* § 2000e(b). The existence of an employer-employee relationship is a "primary element" of a Title VII claim. *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir.2006); *see also Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir.1996).

■ To determine whether an employer-employee relationship exists, courts generally focus on the degree of control exercised by the hiring party over the manner and means of the individual's employment. *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 739–40, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Gulino*, 460 F.3d at 371–72. A plaintiff's failure to prove that an entity qualifies as an employer is a ground for defeating her claim on the merits. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000).

Title VII also prohibits employment discrimination by a labor organization "engaged in any industry affecting commerce, and any agent of such an organization," including "any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers." 42 U.S.C. § 2000e(d).

#### 2. *The ADEA*

The ADEA prohibits discrimination by employers, employment agencies, and labor organizations on the basis of age. 29 U.S.C. § 621. To fit within the statutory definition of an employer, a person must be engaged in an industry affecting commerce and have twenty or more employees. *Id.* § 630(b). An agent of such a person also qualifies as an employer. *Id.* The ADEA's definition of a labor organization is the same as that of Title VII. *Compare id.* § 630(d) *with* 42 U.S.C. § 2000e(d).

#### 3. *The EPA*

The EPA prohibits an employer from paying lower wages to employees of one sex when the work "requires equal skill, effort, and responsibility" and is performed under similar conditions. 29 U.S.C. § 206(d). The statute defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." *Id.* § 203(d). Therefore, to be held liable as a labor organization under the EPA, the Firm would have to be "acting as an employer." *Id.* To be held liable as an agent of a labor organization, the Firm would have to be acting as an agent of a labor organization that was acting as an employer.

### b. *Application*

The amended complaint fails to allege sufficient facts to support a plausible claim that the Firm is plaintiff's employer or a labor organization under any of the three statutes.

### 1. *Title VII and the ADEA*

First, the Firm does not meet Title VII's threshold requirement that it employ at least fifteen employees or the ADEA's requirement that it employ at least twenty employees to be subject to liability: beyond its two partners, the Firm only has four employees. (Def.'s Mot. to Dismiss 12 n. 3). Although these facts do not appear in the complaint, they do not appear to be in dispute, and plaintiff has not alleged anywhere that the Firm employs fifteen or more employees.

Second, even if the Firm did not have judicial immunity and had fifteen (or twenty) employees, plaintiff does not allege any facts that would support a finding of an employment relationship between herself and the Firm. Moreover, although plaintiff does allege that the Firm oversees the Voluntary Referral Hall, that fact, even if true, does not establish an employment relationship. Raff is responsible for adjudicating complaints such as this one, so he would have some connection to plaintiff, but he is not responsible for any hiring, firing, or compensation-related decisions. This type of involvement is what courts normally require before finding that an employer-employee relationship exists. *See, e.g., Gulino,* 460 F.3d at 371–72.

Third, the Firm is not a labor organization. It is a limited liability partnership, formed to practice law, and certainly does not exist "for the purpose, in whole or in part, of dealing with employers." *See* 42 U.S.C. § 2000e(d); 29 U.S.C. § 630(d).

Last, although Title VII and the ADEA define the term employer to include agents of the employer, *see* 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b), and the term labor organization to include agents of the labor organization, *see* 42 U.S.C. § 2000e(d); 29 U.S.C. § 630(d), the Firm does not act as an agent of Local 28 or any of the contractors who do business with the Voluntary Referral Hall and might be considered plaintiff's employers under either of these statutes. As Special Master, Raff is an agent of the Court, not of Local 28, the Voluntary Referral Hall, or any contractors. *See Dilacio,* 593 F.Supp.2d at 576.

### 2. *The EPA*

■ The same logic holds true for the question of whether the Firm qualifies as an employer, a labor organization acting as an employer, or an agent of such a labor organization under the EPA with respect to Quitoriano. The determinative issue is whether Raff acts directly or indirectly in the interest of Local 28 or any contractors within the purview of the EPA. *See* 29 U.S.C. § 203(d). Raff was appointed by the Court pursuant to litigation contested by Local 28; his actions are subject to court supervision; and he is subject to removal only by the Court's decree. 1975 Order ¶¶ 13, 14, 20. Therefore, he does not act in the interest of Local 28 or any third parties and does not qualify as plaintiff's employer. In addition, because he is an agent of the Court and not of Local 28, he cannot be held liable as an agent even if the union is a labor organization acting as an employer.

Accordingly, neither Raff nor the Firm meets the requirements of Title VII, the ADEA, or the EPA, and they cannot be held liable for plaintiff's employment discrimination claims.

### *CONCLUSION*

For the foregoing reasons, defendant's motion is granted and the amended complaint is dismissed, with prejudice. The

Clerk of the Court shall enter judgment accordingly, without costs or fees.

SO ORDERED.